189 N.J. Super. 543 (1983)
461 A.2d 174
MILLER AUTO LEASING COMPANY, PLAINTIFF,
v.
MARTIN S. WEINSTEIN, INDIVIDUALLY AND TRADING AS LINCOLN HARDWARE & SUPPLY, JOINTLY, SEVERALLY OR IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided March 22, 1983.
*544 Dietz, Allen & Sweeney, for plaintiff (John A. Sweeney, appearing).
Mark R. Silber, for defendant.
WELLS, J.S.C.
The court has before it a motion it reserved at the end of a jury trial to enter judgment for plaintiff. R. 4:40-2(a). The jury's verdict was for defendants. The parties waived the ten-day period for decision and submitted briefs.
The facts of the case are virtually identical to those of A-Leet Leasing Corp. v. Kingshead Corp., 150 N.J. Super. 384 (App.Div. *545 1977), and, indeed, the "interesting issue," id. at 393, delineated in that case but not reached, is now ripe for decision in this case.
Plaintiff is in the business of leasing cars on a long-term basis (in this case three years). Here, defendants picked out a 1979 Alpha Romeo for both business and personal use from a dealer, Z & W, in Princeton. Not desirous of funding the full purchase price of $12,700, defendants decided to lease the vehicle and did so through plaintiff (located in Mount Holly) on the recommendation of Z & W. Plaintiff purchased the vehicle, and the lease, described as a "Finance" lease, was signed at defendant's place of business in New Brunswick. Delivery of the car was then accomplished at Z & W and two periodic service checkups required by the owner's manual were performed there. A new car manufacturer's warranty was issued to defendants through Z & W by Alpha Romeo, the manufacturer. Plaintiff had no duty to repair or maintain the vehicle under the lease and it gave no express warranties of any kind. The rental payments were calculated in such a way that defendants could at the end of the lease term buy the car for its original price less a sum fixed by the lease as depreciation.
Just short of a year after acquisition (and therefore within the manufacturer's warranty period) the car failed to operate. The details of that failure do not concern the present issue,[1] but it should be pointed out that they were the subject of hotly disputed testimony which was submitted to the jury under instructions describing the principles of implied warranty of merchantability. The jury obviously concluded the car was subject to a defect arising in the hands of the manufacturer which breached the implied warranty, resulting in a complete failure of consideration. A-Leet, supra at 393; Herbstman v. Eastman Kodak Co., 68 N.J. 1 (1975).
*546 The issue raised is whether plaintiff lessor is subject to a breach of implied warranty of merchantability defense to its claim on the lease. Plaintiff sued entirely on its lease, claiming only those sums expressly allowed it, including repossession and repair expenses, lost rentals and future loss of income (as fixed by the lease) and loss upon resale of the repaired vehicle. Except for one repair item, the contractual propriety of these claims was not disputed, nor were the amounts.
The issue was posed in A-Leet, supra at 392, as follows:
It is to be noted that here Shafir himself selected the automobile from the dealer. The lessor was not involved at all in that process. Its role was simply to finance the transaction through the device of a leasing arrangement, although it is true that the actual purchase of the vehicle from the dealer was accomplished by the lessor. In such instances, a cogent argument might be made that the lessee, unlike situations in which the lessor is a dealer in motor vehicles, does not rely upon the skill and judgment of the lessor, who may be in no better position than he to detect possible defects or flaws in the vehicle leased. Therefore, the implied warranties of merchantability or fitness for use ought not to obtain. This would particularly be so where, as in this case, the dealer himself furnished the lessee a standard express warranty.
Plaintiff's brief now makes the "cogent argument" that, indeed, it is nothing more than a financier of the transaction; that the implied warranties are not given by it and their breach cannot provide defendants with a defense.
While plaintiff's business is that of leasing vehicles, it does not maintain its own inventory of cars for that purpose, such as the typical U-Drive-it operation. Defendants did not rely on the skill and judgment of plaintiff in selecting their car. Indeed, plaintiff purchased the vehicle sight unseen at the behest of Z & W and forthwith leased it to defendants, who picked it up at Z & W. Under these circumstances warranty obligations were given directly by the manufacturer through Z & W to the ultimate consumers. Defendants realized this when they got the warranty book and took steps to comply with the required maintenance schedule. Since possession of the vehicle never came into the hands of plaintiff, it was clearly in no better position than defendants to detect possible defects or flaws in the vehicle. In all of this plaintiff's positions is clearly analogous to that of a bank or other financial institution.
*547 Cintrone v. Hertz Truck Leasing, 45 N.J. 434 (1965), is distinguishable. Cintrone was injured while a passenger in a truck leased by his employer, Contract Packers, from defendant Hertz. The court held Hertz responsible under warranty/product liability theory. But Contract Packers used trucks in its business and leased nine of them from Hertz on a long-term basis. Hertz agreed to service, repair and maintain them, and did so both in its own garage and through a mechanic sent to Contract Packer's place of business. If the condition of a truck required that it be removed from service, Hertz provided a replacement.
No greater contrast to Hertz' role in Cintrone could be imagined than that of plaintiff in this case who never saw, let alone serviced, the car prior to its repossession. In Cintrone Hertz was unequivocally instrumental in placing vehicles in the stream of commerce and had virtually day-to-day responsibility and opportunity to monitor the fitness of its vehicles. In this case plaintiff had no such responsibility or opportunity, nor did the lease contemplate such. Plaintiff provided nothing here except the universal wherewithal  money  by which to fund this sale (for in substance, if not in form, that is what it was[2]) between Z & W and defendants. Only in that sense, extant in every noncash transaction, did plaintiff have a role in placing this car in the stream of commerce. Neither policy nor logic require the warranties of merchantability be imposed on plaintiff in such a situation. A-Leet, supra.
Defendant, however, also suggests two other arguments whereby the implied warranties should be imposed on plaintiff. First, defendants suggest that 15 U.S.C.A. § 2301 et seq., the Magnuson-Moss Warranty-FTC Improvement Act, is applicable and requires implied warranties be imposed upon plaintiff. See *548 Ventura v. Ford Motor Corp., 180 N.J. Super. 45, 59-68 (App.Div. 1981), for a discussion of this Act. § 2301(4) and (5) read:
(4) The term "Supplier" means any person engaged in the business of making a consumer product directly or indirectly available to consumers.
(5) The term "warrantor" means any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty.
But § 2301(7) reads:
(7) The term "implied warranty" means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product.
Accordingly, it is state law which governs the arising of an implied warranty against a "supplier." In the court's opinion, under New Jersey law no such warranty arises against a lessor such as plaintiff who has no function in the transaction other than to supply the capital, and upon whose skill and judgment the lessee did not rely. A-Leet, supra.
Secondly, defendants also urged, at trial, that even a financier may be liable for implied warranties under an extension of the holding in Unico v. Owen, 50 N.J. 101 (1967). But to invoke that principle proof must be introduced to establish that such a close and dominating relationship between financier and seller exists as to create a joint venture which would make it inequitable for the financier to escape claims of failure of consideration in sales of consumer goods on credit. During trial no proofs of that nature were attempted, and accordingly no basis in fact stands which would permit the failure of this vehicle to be visited upon plaintiff.
For the reasons stated the court holds that the manufacturing defect found by the jury to have breached the implied warranty of merchantability in this case is not a defense to plaintiff's action on the lease. Accordingly, judgment n.o.v. is granted.
*549 The only remaining issue is to fix the amount due plaintiff. Plaintiff's claim, as detailed by its witnesses during trial and exhibited on P-16, amounted to $7,305.14 less a credit of $305, or $7,000.14. Most of these damages were either liquidated or uncontroverted. However, they did include a repair bill of $2,699.05 which, in turn, was based upon $1,450 in labor costs. The defense expert testified that, based upon a labor rate of $25 an hour, $1,450 represented 58 hours of work which he deemed unreasonable in view of the fact that the car arrived at the shop virtually disassembled. The issue of the reasonableness of this item was submitted to the jury but it returned no finding thereon because its verdict on the principal issue exculpated defendants completely. The parties are, therefore, technically entitled to a new trial on the issue of damages, which the court hereby awards under the following condition: Should plaintiff accept within ten days hereof a remittitur in the amount of its claim for $7,000.14 in the sum of $725 (representing one-half of the disputed labor costs, a reasonable sum, in the court's opinion, in light of all the testimony) then judgment n.o.v. will enter for $6,275.14, together with costs to be taxed.
NOTES
[1] Suffice it to say, that as a result of the failure defendants stopped their rental payments and permitted repossession of the vehicle. Plaintiff had it repaired and resold and instituted this action for damages, in the nature of a deficiency claim, under the lease.
[2] Defendant's brief seems to urge that the court consider defendants a "purchaser," not a "lessee." See Hertz Commercial Leasing Corp. v. Trans. Credit, 59 Misc.2d 226, 298 N.Y.S.2d 392 (Civil Ct. 1969). In fact, the court adopts that position, but that is not the problem. The issue is, who is the "seller" for purposes of imposing implied warranties, and on that question it seems clear Z & W and the manufacturer of Alpha Romeos are the true "sellers," not plaintiff. We are, therefore, willing to hold, notwithstanding the technicalities of the lease-form, that "title" in fact passed from Z & W/Alpha to defendants, with plaintiff merely obtaining a security interest in the vehicle. See N.J.S.A. 12A:1-201(37); Annotation, "UCC Equipment Lease as Security Interest," 76 A.L.R.3rd 11 (1977).