806 F.2d 1207
 2 UCC Rep.Serv.2d 769
 GENERAL ELECTRIC CREDIT CORPORATION OF TENNESSEE
v.
GER-BECK MACHINE CO., INC., Fischer Industries, Inc., and
American Tool, Inc., Defendants.
GER-BECK MACHINE CO., INC., American Tool, Inc. and Fischer
Industries, Inc., Third-party plaintiffs,
v.
GENERAL AUTOMATION, INC., Third-party defendant.
Appeal of GER-BECK MACHINE CO., INC.
 No. 85-5713.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 21, 1986.
Decided Dec. 8, 1986.
Rehearing Denied Jan. 9, 1987.
 
 Raymond H. Shockley, Jr. (argued), Cahill, Wilinski & Cahill, Haddonfield, N.J., for appellant.
 Miles H. Shore (argued), Saul Ewing Remick & Saul, Philadelphia, Pa., for appellee General Elec. Credit Corp. of Tennessee.
 Before BECKER and MANSMANN, Circuit Judges, and TEITELBAUM, District Judge.*
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 This is an appeal from the district court's entry of judgment notwithstanding the verdict in favor of the plaintiff General Electric Credit Corporation ("GECC") in an action to recover from the defendant GerBeck Machine Co., Inc. ("Ger-Beck") amounts allegedly due and owing under a note for the purchase price plus interest of a metal lathe manufactured by American Tool, Inc. We agree with the district court's conclusion that the evidence establishes as a matter of New Jersey law that the transaction between GECC and Ger-Beck, while evidenced by an instrument denominated as a lease, was intended only as security for payment of the note. Since such a transaction is expressly excluded from coverage under Article 2 of the Uniform Commercial Code, the record cannot support the jury's finding that Ger-Beck's attempted revocation of acceptance of the lathe was effective against GECC. Therefore, we will affirm.
 
 I.
 
 2
 In November of 1977 Ger-Beck sought to acquire a metal lathe for use in its business. Ger-Beck selected a lathe manufactured by American Tool, Inc. and sent a purchase order to the distributor of the lathe. Through an independent loan broker, Ger-Beck contacted GECC to arrange financing. In July 1978, GECC and Ger-Beck entered into an agreement whereby GECC would pay the purchase price of the lathe in return for Ger-Beck's note for the purchase price plus interest. Repayment terms were specified in a lease agreement whereby Ger-Beck agreed to make fixed monthly payments. It was further agreed that at the end of the lease period Ger-Beck would become the owner of the lathe for approximately 20 percent of its original price. Ger-Beck deposited this sum with GECC.
 
 
 3
 In 1978, immediately after the installation of the lathe in Ger-Beck's plant, Ger-Beck began experiencing problems with it and called upon American Tool to cure the defects. On the assurance of American that the defects could be remedied, Ger-Beck accepted the lathe. Upon notification of Ger-Beck's acceptance of the lathe, GECC paid the distributor the full purchase price.
 
 
 4
 American was unable to remedy the defects to Ger-Beck's satisfaction. In July 1980 Ger-Beck ceased making payments under the lease, and in August 1980 notified GECC for the first time that the lathe was not operating satisfactorily. GECC brought this diversity action on the note and on the lease. At trial GECC proceeded on the note only.
 
 
 5
 At trial Ger-Beck asserted the defense of breach of warranty amounting to a complete failure of consideration. The defendant also alleged a proper revocation of acceptance of the lathe, and counterclaimed for the return of the deposit and rental payments under a written lease agreement with the plaintiff. Both the defenses and the counterclaim assumed that the transaction between the plaintiff and the defendant was in the nature of a sale governed by Article 2 of the Uniform Commercial Code. See N.J.S.A. 12A:2-101 to 2-725.
 
 
 6
 The case was tried to a jury and at the close of the defendant's case, the plaintiff moved for a directed verdict asserting that its lease arrangement with Ger-Beck was strictly a financing transaction in which the lease was intended to provide only a security interest. Therefore Article 2 by its express terms did not govern the rights and duties of the parties. See N.J.S.A. 12A:2-102.
 
 
 7
 The trial court denied the motion for a directed verdict. The jury returned a verdict for Ger-Beck, finding on special interrogatories that the transaction between GECC and Ger-Beck was a sale and not merely a financing arrangement. GECC renewed its motion under Fed.R.Civ.P. 50(b) and requested judgment n.o.v. The trial court ultimately ruled that Article 2 did not apply to the transaction as a matter of law and therefore sustained the plaintiff's motion and entered judgment accordingly.
 
 II.
 
 8
 A judgment n.o.v. should be granted only if there is no evidence on which a jury could properly find a verdict for the party opposing the motion. Powell v. J.T. Posey Co., 766 F.2d 131 (3d Cir.1985). An appellate court should apply the same standard as the trial court in determining the propriety of a judgment n.o.v. Id. at 134, quoting Dudley v. South Jersey Metal, Inc., 555 F.2d 96 (3d Cir.1977).
 
 
 9
 On appeal, Ger-Beck does not press its breach of warranty defense. It argues only that the evidence supports the jury's finding that it made an effective revocation of acceptance.
 
 
 10
 In this diversity action we must apply the law of the forum state. We may affirm the judgment n.o.v. only if, as a matter of New Jersey law, there is no evidence from which a jury could find that Ger-Beck's revocation of acceptance of the lathe was effective against GECC.
 
 
 11
 Revocation of acceptance is a remedy available in transactions governed by Article 2 of the Uniform Commercial Code. See N.J.S.A. 12A:2-608. The focal issue in this case is framed by the provision of the Code which by its express terms excludes from the coverage of Article 2 "any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction...." N.J.S.A. 12A:2-102. The verdict for the defendant depended on the threshold finding that the transaction between the plaintiff and the defendant was not intended to operate only as a financing transaction. The plaintiff argues that as a matter of law the lease agreement was intended only as a security transaction to which Article 2 remedies are inapplicable.
 
 
 12
 By the undisputed facts, the plaintiff provided nothing in this three-way transaction except the money to finance Ger-Beck's acquisition of the lathe from the supplier. We would, of course, be bound by a definitive statement by the New Jersey Supreme Court as to whether a party who merely finances a three-way equipment lease-purchase transaction may be treated as a seller for the purpose of a revocation of acceptance. Since no such authority exists, we must predict how New Jersey's highest court would decide this issue. McGowan v. University of Scranton, 759 F.2d 287 (3d Cir.1985). Decisions of intermediate appellate courts are evidence of state law, id. at 291, and must be given significant weight in the absence of any indication that the highest state court would rule otherwise. Ciccarelli v. Carey Canadian Coal Mines, Ltd., 757 F.2d 548 (3d Cir.1985).
 
 
 13
 In entering judgment n.o.v., the district court relied on the decision of the New Jersey Superior Court Appellate Division in Miller Auto Leasing Co. v. Weinstein, 193 N.J.Super. 328, 473 A.2d 996 (App.Div.1984), aff'g 189 N.J.Super. 543, 461 A.2d 174 (Law Div.1983), cert. denied, 97 N.J. 676, 483 A.2d 192 (1984). In Miller, the plaintiff was a lessor who did not ordinarily manufacture or sell the equipment which was the subject matter of the lease. Rather, upon request by the lessee, the lessor purchased equipment from a supplier and in turn leased it to the lessee. The lessor had no contact with the equipment; the lessee did not rely in any way on the lessor's expertise when selecting the equipment. In fact, the lessor's only function was to supply the financing for the transaction. A jury had found a breach of warranty resulting in a complete failure of consideration. The New Jersey court found that the lessor was strictly a financier and that as a matter of law it was not a "seller" for purposes of Article 2 warranties. The court granted a motion for judgment n.o.v.
 
 
 14
 It is uncontested that the facts here are indistinguishable from those in Miller. The defendant concedes on appeal that under Miller the plaintiff lessor is not a seller for purposes of imposing warranties. The defendant argues, however, that GECC is nevertheless a seller for purposes of revocation of acceptance by the buyer and that, therefore, the jury's finding that Ger-Beck properly revoked acceptance of the lathe should not be ignored.
 
 
 15
 We have no indication that the New Jersey Supreme Court would disapprove the decision in Miller.[1] Nor have we found a case from any jurisdiction where U.C.C. buyer's remedies have been enforced on behalf of a nominal lessee who will ultimately acquire ownership of the leased property and against a finance lessor who had no connection with the lessee's choice of equipment to be leased and who had no relationship by agency or assignment with the actual supplier of the equipment. On the contrary, courts have held that in such situations a buyer/lessee's remedy is properly against the actual supplier. See e.g., Chatlos Systems, Inc. v. National Cash Register Corp., 479 F.Supp. 738 (D.N.J.1979); Citicorp Leasing, Inc. v. Allied Institutional, Distrib., Inc., 454 F.Supp. 511 (W.D.Okla.1977).
 
 
 16
 Furthermore, we find that the language of Miller offers no suggestion that the New Jersey courts would find the transaction between a buyer and a financing agent who only contributed money in a three-corner transaction to be governed by Article 2 for any purpose. To the contrary, the court indicated by way of a footnote that the Miller case should be given a broad reading as holding that the transaction at issue was as a matter of law intended only for security. The New Jersey court stated:
 
 
 17
 Defendant's brief seems to urge that the court consider defendants a "purchaser" not a "lessee" (citation omitted). In fact, the court adopts that position, but that is not the problem. The issue is, who is the "seller" for purposes of imposing implied warranties, and on that question it seems clear Z & W and the manufacturer of Alpha Romeos are the true "sellers", not plaintiff. We are, therefore, willing to hold, notwithstanding the technicalities of the lease-form, that "title" in fact passed from Z & W/Alpha to defendants, with plaintiff merely obtaining a security interest in the vehicle....
 
 
 18
 189 N.J.Super. at 547 n. 2, 461 A.2d 174.
 
 
 19
 The defendant claims a revocation of acceptance under Article 2. A revocation of acceptance is accomplished by notifying the seller. See N.J.S.A. 12A:2-608 comment 1. Therefore, for a revocation to be effective against it, GECC must be classified as a seller. A "seller" is defined as "a person who sells or contracts to sell goods." N.J.S.A. 12A:2-103(d). A "sale" consists in the passing of title from the seller to the buyer for a price. N.J.S.A. 12A:2-106(1). The Miller court held specifically that, "notwithstanding the technicalities of the lease form," title in fact passed from the distributor/manufacturer to the buyer, with the financier merely obtaining a security interest in the vehicle. See Miller, 189 N.J.Super. at 547 n. 2, 461 A.2d 174. The Code section cited by the New Jersey court in Miller deals with leases which are intended as security. See N.J.S.A. 12A:1-201(37). In holding that a financing agent as a matter of law acquires only a security interest in the goods, Miller impliedly holds that the transaction cannot be other than one intended only for security as between financier/lessor and buyer/lessee.
 
 
 20
 We find that by the undisputed facts, the plaintiff provided nothing in this three-way transaction except the money to finance a sale between a manufacturer of equipment and the buyer. Therefore, under Miller, the plaintiff's status is, as a matter of law, solely that of financier. Consequently, the transaction between the plaintiff and the defendant was, as a matter of law, intended only as a security transaction to which, by its terms, Article 2 does not apply. See N.J.S.A. 12A:2-102.
 
 
 21
 We agree with the district court that the question of whether the transaction between the plaintiff and the defendant was intended as a sale should not have been submitted to the jury. Since the verdict for the defendant depended on the applicability of Article 2 through the threshold finding of a sale, the record cannot support the verdict. Ger-Beck may not prevail on a defense or counterclaim based on Article 2.
 
 
 22
 We conclude that the trial court did not err in its ruling that as a matter of law Article 2 does not apply to the transaction here involved and therefore did not err in granting the plaintiff's motion for judgment n.o.v. Accordingly, we will affirm the judgment of the district court.
 
 
 23
 BECKER, Circuit Judge, dissenting.
 
 
 24
 This case turns on the structure of the underlying transaction. Was the transaction one "intended to operate only as a security transaction," to which Article Two of the Uniform Commercial Code is inapplicable under Sec. 2-102, N.J.S.A. Sec. 12A:2-102? If not, was GECC a "seller" against whom acceptance can be revoked under Sec. 2-608 of the Uniform Commercial Code, N.J.S.A. Sec. 12A:2-608? As I read the record, it is incontrovertible that this transaction was structured by GECC, making use of its own standard forms, so that it would first take title from the manufacturer and then enter an arrangement with Ger-Beck whereby GECC would be the seller of the equipment and Ger-Beck the buyer. In short, GECC used its considerable leverage to structure the transaction in part as a sale, presumably for its own advantage, and these sales aspects must be governed by Article Two.
 
 
 25
 Notwithstanding the jury verdict in favor of the defendant the majority now relieves defendant GECC from the risk of its chosen path--the risk that Ger-Beck would exercise its Sec. 2-608 remedy of revocation of acceptance against GECC as seller of a substantially nonconforming product. It bases this result on dictum in a single footnote in one New Jersey trial court case (which was later affirmed in a single-paragraph per curiam opinion) that declines to imply warranties against a non-"merchant." The majority reasons that we are thereby compelled to find that the New Jersey Supreme Court would hold that a buyer may never revoke acceptance against a seller for the mere reason that the seller is a finance company. In my view, the majority misreads that footnote and the balance of the opinion in Miller Auto Leasing Co. v. Weinstein, 189 N.J.Super. 543, 461 A.2d 174 (Law Div.1983), aff'd per curiam 193 N.J.Super. 328, 473 A.2d 996 (App.Div.1984), cert. denied, 97 N.J. 676, 483 A.2d 192 (1984), which expressly applies only to breach of warranty remedies under Secs. 2-314 and 315 of the Uniform Commercial Code, N.J.S.A. 12A:2-314, 315, and not to the very different remedy of revocation of acceptance under U.C.C. Sec. 2-608, N.J.S.A. Sec. 12A:2-608. This misreading limits the affected purchaser to his Article Nine remedies only, as if no title had been transferred. I believe that the New Jersey Supreme Court would hold to the contrary, that even where warranties cannot be implied, the separate Article Two remedy of revocation of acceptance is available and was properly invoked in this case. I therefore respectfully dissent.
 
 I.
 
 26
 The majority highlights certain facts that lend support to its result, but ignores additional facets of the record. Given the district court's limited scope of review in setting aside a jury verdict,[1] these facts are especially important.
 
 
 27
 As trial testimony from both GECC and Ger-Beck witnesses makes clear, GECC purposefully structured its relationship with Ger-Beck so that GECC would pay the purchase price of the lathe directly to the manufacturer and thereby acquire title to the equipment. See Record at 40a, 43a-44a, 48a, 73a, 104a. GECC and Ger-Beck then signed a standard GECC lease form, see Record at 45a, 148a, which required, among other provisions, that lessee Ger-Beck maintain theft and fire insurance on the lathe for the benefit of lessor GECC "[f]rom the time the Equipment is delivered to the Lessee until it is returned to Lessor." The lease also specified that "the Equipment shall at all times remain personal property of Lessor." Upon commencement of this lease and in accordance with its terms, Ger-Beck deposited $26,938.20 with GECC. Additionally, GECC and Ger-Beck executed an addendum to the lease that required Ger-Beck to purchase the lathe upon the lease expiration. The required purchase price equalled Ger-Beck's deposit under the lease.[2] Subsequently, upon its original acceptance of the lathe, Ger-Beck executed a "Lessee's Certificate of Delivery and Installation" for the benefit of GECC.
 
 
 28
 Under these facts, the jury had more than enough bases to determine, as it did by answer to special interrogatory, that the transaction between GECC and Ger-Beck was not merely a financing arrangement but also a sale of equipment. Title to the lathe clearly passed to GECC from the manufacturer, and GECC contracted with Ger-Beck for subsequent transfer of that title. GECC paid the purchase price directly to the manufacturer, choosing not to loan Ger-Beck the money to purchase the lathe directly from the manufacturer itself. This was done in order to structure the transaction according to GECC's choice. Subsequently, GECC entered with Ger-Beck into a lease containing a "guaranteed purchase option" addendum, thereby selling the lathe GECC had acquired from the manufacturer to Ger-Beck. On the facts presented and under the narrow scope of review afforded the district court and now this court, the jury's determination that the transaction had sales aspects and that GECC was the seller cannot be overturned by a judgment n.o.v.
 
 II.
 
 29
 In examining the jury verdict, the majority properly focuses on N.J.S.A. Sec. 12A:2-102 and rightly states that "[t]he verdict for the defendant [Ger-Beck] depended on the threshold finding that the transaction between the plaintiff and the defendant was not intended to operate only as a financing transaction." See Majority Opinion at 1209 (emphasis supplied). Despite (or perhaps because of) the compelling factual predicate for the jury's finding, demonstrated in Part I, supra, the majority attempts to transform the issue into a question of law by concluding that "the evidence establishes as a matter of New Jersey law that the transaction between GECC and Ger-Beck, while evidenced by an instrument denominated as a lease, was intended only as security for payment of the note." At 1208. The majority's analysis misconstrues N.J.S.A. 12A:2-102, however. Indeed, the majority ignores not only the plain language of that section and the comments thereto, but also the interpretation of that provision by the New Jersey Supreme Court and its sister state supreme courts. All of this authority supports the jury's verdict that the transaction at issue was in part a sale subject to Article Two of New Jersey's Uniform Commercial Code.
 
 
 30
 N.J.S.A. 12A:2-102 states in pertinent part that Article Two "does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction." The New Jersey comment to N.J.S.A. 12A:2-102 explains what is already made explicit by the language of that section: Article Two "covers actual sales transactions in which the seller retains a security interest, since the section excludes those transactions which are intended to operate only as security transactions." N.J.S.A. 12A:2-102, New Jersey Study Comment 2 (emphasis in original). The Code therefore contemplates a system whereby financing elements may coexist with sales aspects. Article Two is inapplicable only where no sales aspects exist.
 
 
 31
 The New Jersey Supreme Court endorsed this plain reading of Sec. 2-102 in Associates Discount Corporation v. Palmer, 47 N.J. 183, 219 A.2d 858 (1966). The question in Associates Discount was whether Pennsylvania's U.C.C. Sec. 2-102, which is identical to New Jersey's Sec. 2-102, excluded a "bailment lease" from the provisions of Article Two.[3] The court found that the "bailment lease" transaction had both security and sales aspects. See id., 219 A.2d at 860. It held, however, that Sec. 2-102 "excludes from Article 2 those dealings designed to operate only as security transactions."[4] Id. at 861 (emphasis in original); accord Worrell v. Farmers Bank of Delaware, 430 A.2d 469, 471 (Del.1981).
 
 
 32
 Although Associates Discount dealt with the Pennsylvania Code, its reasoning indicates that the New Jersey Supreme Court would interpret New Jersey's provision in the same way. The code sections are identical, and the court relied on no Pennsylvania cases in reaching its conclusion. Moreover, the court placed strong emphasis on the official comments to Sec. 2-102 of the Pennsylvania code, which on this matter do not differ in any substantial way from the New Jersey comments quoted above. In fact, Justice Hall stated in his concurring opinion in Associates Discount that "the court is in effect saying that Pennsylvania would so decide and that it is to be the rule in New Jersey, ... as well as laying down an interpretation which may have an effect in all Code jurisdictions in view of the purpose of over-all uniformity." 219 A.2d at 861-62.[5]
 
 
 33
 The New Jersey Supreme Court's view that the sales aspects of a mixed sale and security transaction are governed by Article Two is consistent with the bulk of authority from other states with the same controlling authority. See, e.g., Steiner v. Mobil Oil Corp., 20 Cal.3d 90, 98 n. 3, 141 Cal.Rptr. 157, 162 n. 3, 569 P.2d 751, 756 n. 3 (1977); Skinner v. Tober Foreign Motors, Inc., 345 Mass. 429, 187 N.E.2d 669, 671 (1963); May Co. v. Trusnik, 54 Ohio App.2d 71, 375 N.E.2d 72 (1977); cf. North Carolina Nat'l Bank v. Holshouser, 38 N.C.App. 165, 247 S.E.2d 645 (1978) (distinguishing Associates Discount on differences in the states' comments to Sec. 2-102). This rule has been applied when, like the transaction here, a third-party finance company is involved. See, e.g., Massey-Ferguson Credit Corp. v. Casaulong, 133 Cal.Rptr. 497, 62 Cal.App.3d 1024 (1976); Citizen's Natl. Bank of Decatur v. Farmer, 77 Ill.App.3d 56, 32 Ill.Dec. 740, 395 N.E.2d 1121 (1979).
 
 
 34
 Because Article Two applies to the sales aspects of a mixed sale and security transaction, both Article Two and Article Nine govern. As one commentator has noted, Sec. 2-102 serves to make this joint coverage complementary:
 
 
 35
 Article 9 of the Code specifically deals with secured transactions, which, when read with Sec. 2-102, means that in the creation of a security interest it is Article 9 that governs and not Article 2. However, Article 2 would be applicable in that transaction to the extent that it governs the original acquisition or transfer of the goods which form the subject matter of the transaction in which there is a security interest.
 
 
 36
 Squillante, Commercial Code Review: Transactions not within the Uniform Commercial Code (Under Article 2--Sales), Part VI, 76 Comm. L.J. 101, 101 (1971).
 
 
 37
 The transaction between GECC and Ger-Beck involves the transfer of title to the lathe and therefore has sales aspects which are governed by Article Two. To be sure, the transaction has aspects of a security transaction. The existence of these aspects, however, does not detract from the fact that the transaction also constituted a contractual agreement to pass title for a price at a future time--that is, a "contract for sale" as defined by N.J.S.A. 12A:2-106(1). Ger-Beck now properly attempts to avail itself of its Article Two remedy of revocation of acceptance. Because the lathe was substantially nonconforming, there has been a failure of consideration and Ger-Beck has the right under Article Two to revoke its acceptance.[6] N.J.S.A. Sec. 2-608. I believe that the New Jersey Supreme Court would look to Associates Discount and its progeny to find that revocation of acceptance is a proper remedy for the sales aspect of this transaction, i.e., the transfer from GECC to Ger-Beck of the title to the lathe.
 
 III.
 
 38
 Notwithstanding the factual and legal support for the jury's verdict, discussed supra Sections I and II, the majority concludes that, as a matter of law, Ger-Beck may not avail itself of its Article Two remedy of revocation of acceptance. This legal conclusion is predicated exclusively on Miller, supra, with special emphasis on the second footnote of the trial court's opinion. The majority's reliance, however, is misplaced. A plain reading of the Miller case reveals that it does not deal with revocation of acceptance at all but with a different Article Two remedy, that for breach of implied warranty of merchantability.[7]
 
 
 39
 The transaction in Miller resembles the one between GECC and Ger-Beck to the extent that a manufacturer sold the equipment (an automobile) to a finance company which subsequently "leased" it to the ultimate consumer. The court denied the ultimate consumer in Miller a remedy against the finance company for breach of implied warranty, see generally N.J.S.A. 12A:2-314, 315. The consumer's right to revoke acceptance of a substantially non-conforming good under N.J.S.A. 12A:2-608, however, was not at issue in the case. The Miller court therefore treated the issue before it as one concerned only with implied warranty of merchantability; indeed, the evidence in Miller "was submitted to the jury under instructions describing the principles of implied warranty of merchantability," 461 A.2d at 175.
 
 
 40
 Moreover, the opinion in Miller focused entirely on the question of whether the finance company in that case was a "merchant" as that term is used in Article Two, see generally N.J.S.A. 12A:2-104(1), because a merchant is the only seller subject to a claim for breach of an implied warranty of merchantability. See generally N.J.S.A. 12A:2-314, 315. Under the Uniform Commercial Code, "a warranty that the goods shall be merchantible is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind," N.J.S.A. 12A:2-314(1). All sellers, however, are not merchants. Only those who hold themselves out as having special knowledge of the product they sell, or those who may be assumed to have such knowledge, are deemed to be "merchants" under the U.C.C. See N.J.S.A. 12A:2-104(1); see also N.J.S.A. 12A:2-104, Uniform Commercial Code Comment 2 ("Obviously, this qualification restricts the implied warranty to a much smaller group than everyone who is engaged in business and requires a professional status as to particular kinds of goods."). In rejecting the claim for breach of implied warranty against the finance company, the Miller court simply noted that the finance company had no special knowledge concerning the product it sold and thus was not a merchant subject to a claim for breach of an implied warranty of merchantability. See 461 A.2d at 176-77.
 
 
 41
 An examination of the differences between breach of implied warranty and those of revocation of acceptance illuminates the importance of the distinction between the remedies and demonstrates why Miller is inapposite. "The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him," N.J.S.A. 12:A2-608(1), if he does so within a reasonable time, N.J.S.A. 12A:2-608(2). Unlike an implied warranty of merchantability, the remedy of revocation of acceptance is available against all sellers, not just merchants. See N.J.S.A. 12A:2-608(2) (requiring notification of "seller"); see also N.J.S.A. 12A:2-103(1)(d) (defining "seller" as one who "sells or contracts to sell goods"). Thus, Miller 's holding and reasoning that a financing company, playing a role in a transaction similar to that here, is not a merchant is of no consequence to this case.
 
 
 42
 The different remedies also speak to different policy concerns. Two policies for implying warranties against only merchants support the Miller holding. First, buyers rely on merchants' expertise that the products they purchase are "fit for the ordinary purpose for which such goods are used," N.J.S.A. Sec. 12A:2-314(2)(c). Implied warranties thus allow a form of reliance damages. As the Miller court emphasized, a buyer does not "rely on the skill and judgment" of a non-merchant finance company when purchasing an automobile. Miller, 461 A.2d at 176; see also A-Leet Leasing Corp. v. Kingshead Corp., 150 N.J.Super. 384, 392, 375 A.2d 1208 (App.Div.), cert. denied 75 N.J. 528, 384 A.2d 508 (1977) (no warranties implied because "lessee, unlike situations in which the lessor is a dealer in motor vehicles, does not rely upon the skill and judgment of the lessor [finance company]"); cf. Cintrone v. Hertz Truck Leasing, 45 N.J. 434, 212 A.2d 769 (1965) (cited in Miller for proposition that warranties are implied where lessor holds himself out as expert). Accordingly, Miller concluded that "[n]either policy nor logic require the warranties of merchantability be imposed" on the non-merchant finance company. Id. 461 A.2d at 177.
 
 
 43
 Second, implied warranties impose liability on merchants who, because of involvement with the relevant product, are able to alter the product to remedy the possibility of future defects or spread the risk if they continue to recur. See generally 3 Anderson, Uniform Commercial Code p 2-314:4, at 105-06 (1983). A non-merchant independent finance company has no such intimate involvement with the financed product. As Miller noted, the finance company had no "responsibility or opportunity" to "monitor the fitness of the vehicles," "nor did the lease contemplate such." 461 A.2d at 176. Instead, "warranty obligations were given directly by the manufacturer through [the dealer] to the ultimate consumers." Id. This policy concern is also inapplicable to non-merchant finance companies.
 
 
 44
 Revocation of acceptance, however, presents a different set of concerns that support its wide applicability. Revocation of acceptance under N.J.S.A. 12A:2-608 embraces a substantial performance standard that ameliorates the harsh perfect tender rule found in N.J.S.A. 12A:2-601. Under the perfect tender rule, the buyer may reject an entire shipment "if the goods or the tender of delivery fail in any respect to conform to the contract." N.J.S.A. 12A:2-601; see A. Farnsworth, Contracts Sec. 8.12, at 595-96 (1984); J. White & R. Summers, Law Under the Uniform Commercial Code Sec. 8-3, at 303-05 (2d ed. 1980). Commentators have noted, however, that because of the prohibitive cost of inspection in advance of contemplated use, Sec. 2-601's harsh perfect tender rule is a "mere shadow of its formerly robust self." Peters, Remedies for Breach of Contract Relating to the Sale of Goods under the Uniform Commercial Code: A Roadmap for Article Two, 73 Yale L.J. 199, 206-08 (1963). Rather, commercial practices proceed under Sec. 2-608's contemplated procedure of acceptance with subsequent revocation for goods whose "nonconformity substantially impairs" the value to the buyer--a significantly less onerous standard. See id. at 206-08; see also Kessler, The Protection of the Consumer Under Modern Sales Law, Part I, 74 Yale L.J. 262, 284-85 n. 114 (1964).
 
 
 45
 By importing Miller into its analysis of N.J.S.A. 12A:2-608, the majority holds that only those who buy from merchants may revoke their acceptance of a substantially non-conforming good. Application of Sec. 2-608 against only "merchants," however, produces an anomalous result: unqualified "sellers" are to be governed by the perfect tender rule, while the "merchants" who have expertise in the relevant product are to be governed by the less stringent substantial performance standard. Moreover, application of the revocation of acceptance rule against only "merchants" may force buyers from non-"merchants" to commit significant money, resources and time needed to fully inspect goods before they irrevocably accept them.
 
 
 46
 Because of the significant differences between the remedy of implied warranties and the remedy of revocation of acceptance, a per curiam affirmance by an intermediate appellate court of a trial court's decision in the first context cannot be viewed as a harbinger of the decision of the Supreme Court of New Jersey in the second context. I therefore believe that the majority's reliance on Miller is wholly misplaced. Moreover, I consider the entire case to be of limited precedential value for purposes of a U.C.C. analysis. Nowhere in text does Miller so much as refer to the U.C.C. The single reference that does exist was properly banished as dictum to the second footnote on which the majority so heavily relies.[8] The thrust of the opinion's text is an examination as to whether the finance company is a "merchant" or not, while the footnote in its entirety reads:
 
 
 47
 Defendant's brief seems to urge that the court consider defendants a "purchaser," not a "lessee." In fact, the court adopts that position, but that is not the problem. The issue is, who is the "seller" for purposes of imposing implied warranties, and on that question it seems clear Z & W and the manufacturer of Alpha Romeos are the true "sellers," not plaintiff [the finance company]. We are, therefore, willing to hold, notwithstanding the technicalities of the lease-form, that "title" in fact passed from Z & W/Alpha to defendants, with plaintiff merely obtaining a security interest in the vehicle. See N.J.S.A. 12A:1-201(37); Annotation, "UCC Equipment Lease as Security Interest," 76 A.L.R.3d 11 (1977).
 
 
 48
 461 A.2d at 176 n. 2. The footnote's question "who is the 'seller' for purposes of imposing implied warranties" is not only a sly misstatement of N.J.S.A. 12A:2-314(a) (imposing implied warranties only "if the seller is a merchant"), it is also unnecessary to the principal warranty analysis of the opinion, which concludes that the finance company is not a "merchant." The footnote thus is both dictum and an incorrect suggestion that a finance company can only escape liability for breach of implied warranty if it is not a seller. Its lack of reasoning, its irrelevance to the opinion, the different context in which it was made and its inconsistency with Associates Discount all convince me that the majority's reliance on this footnote in Miller is misplaced.
 
 IV.
 
 49
 I am mindful of the possible unspoken ratio decidendi of the majority's opinion: a finance company is not thought to be in the business of selling goods and should not be subject to Article Two remedies for sales of goods. "[U]nder Miller, the plaintiff's status is, as a matter of law, solely that of financier," concludes the majority. "Consequently, the transaction between the plaintiff and the defendant was, as a matter of law, intended only as a security transaction...." Majority Opinion at 1211. But to look to the general nature of the seller's business rather than the agreement between the parties is to be ruled by "the tyranny of labels." Snyder v. Mass., 291 U.S. 97, 114, 54 S.Ct. 330, 335, 78 L.Ed. 674 (1934). For a finance company to avoid the strictures of Article Two, it should simply limit itself to providing finance and not involve itself in the sale of goods.
 
 
 50
 The real question in this case, however, is not the status of GECC as a finance company. The real question concerns the allocation of risk and potential litigation expenses. Under normal circumstances, GECC would have the same claim for revocation of acceptance against the manufacturer of the lathe as Ger-Beck has presented against GECC. Thus, under normal circumstances, whether Ger-Beck has a claim against GECC or against the manufacturer would be relatively unimportant. Ultimately the manufacturer would have to take back the lathe and return the purchase price. In this case, GECC's liability to Ger-Beck assumes special importance apparently because the manufacturer is in financial difficulty. What is at issue is whether GECC or Ger-Beck must assume the costs incident to those financial difficulties, the potential litigation expenses in bankruptcy and the potential inability to recover. Our construction of New Jersey's version of the Uniform Commercial Code therefore concerns an allocation of risk.
 
 
 51
 Neither Ger-Beck nor GECC serves a function in this transaction that mandates it and not the other to assume the risk and expense incident to the bankruptcy of the manufacturer. I therefore believe that the allocation of this risk is typical of a matter best left to the parties to allocate by contract as they see fit. This may or may not have been the subject of negotiations; nonetheless, the risk was allocated to GECC, which had considerable leverage and used its own standard contract form to memorialize its agreement with Ger-Beck. By injecting itself into the chain of title, GECC assumed the risk that the manufacturer from whom it took title would be unavailable if revocation of acceptance were necessary. We have neither responsibility nor authority to rewrite the contract and its allocation of risk.
 
 V.
 
 52
 In this case, aspects of the transaction that GECC itself structured constituted a sale to Ger-Beck. As the New Jersey Supreme Court has found in interpreting an identical provision of Pennsylvania law, the sales aspect of such a transaction is governed by Article Two. See Associates Discount, supra. Regardless of what a single New Jersey Superior Court case may hold with reference to an implied warranty of merchantability, the separate Article Two remedy was clearly available to Ger-Beck. The lathe which GECC sold to Ger-Beck did not work properly, and this noncomformity substantially impaired the value of the lathe to Ger-Beck. It thus had a right to revoke its acceptance against the seller, GECC, which it did within a reasonable time. The jury verdict should be upheld.
 
 
 
 *
 Honorable Hubert I. Teitelbaum of the United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 The case relied upon by the dissent, Associates Discount Corp. v. Palmer, 47 N.J. 183, 219 A.2d 858 (1966), does not illuminate the issue presented here. The cases appear similar because the plaintiff in Associates Discount, like the plaintiff here, is a third party to a sales transaction whose only role is to provide purchase money to a seller of equipment. In both cases the character of the instrument sued upon is determined by the intent of the parties to the instrument. The analogy ends there, however. In Associates Discount, the instrument sued upon was the agreement between the buyer of an automobile and the seller from whom the buyer selected and purchased the automobile. The plaintiff was merely the assignee of the seller's interest in the document. The New Jersey Supreme Court found the instrument to be both a sales contract and a security agreement and held that the Article 2 statute of limitations applied to the sales aspect of the transaction
 In the instant case, the instrument sued upon is the agreement between the purchaser of equipment and the financier who provided purchase money to a third party upon application of the purchaser who selected the equipment from the third party. It is difficult to see a useful analogy between the intent of the parties to the agreements. In Associates Discount the rights of the plaintiff were those of the supplier of the automobile to the defendant. In the instant case, the crux of the problem is that the rights of the plaintiff and the defendant with respect to one another are completely independent from any rights or duties of the third party supplier of equipment.
 
 
 [1]
 A jury verdict can be overturned by a judgment n.o.v. only under Fed.R.Civ.P. 50(b) only if "the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." Powell v. J.T. Posey Co., 766 F.2d 131, 133-34 (3d Cir.1985), (quoting Dudley v. South Jersey Metal, Inc., 555 F.2d 96, 101 (3d Cir.1977)
 
 
 [2]
 When at trial the addendum was referred to as "an option to buy," a regional manager of GECC answered, "That's a misnomer. There was no option. It was guaranteed." Record at 44a
 
 
 [3]
 At issue was whether Article Two's statute of limitations applied to an action to cover a deficiency arising under the bailment lease
 
 
 [4]
 Accordingly, the court held that Article Two and its statute of limitations applied to the sales aspects of the transaction
 
 
 [5]
 The majority's attempt to distinguish Associates Discount is unpersuasive. The majority notes the difference in form between the transaction as at issue in Associates Discount and the present case, and states that "[i]t is difficult to see a useful analogy between the intent of the parties to the agreements." Yet the majority's holding that Article Two does not apply to Ger-Beck's arrangement with GECC is based not on the intent of the parties but upon its analysis of GECC's status as a matter of law. Certainly to the extent that the intent of the parties is a relevant consideration, it weighs in favor of upholding the jury's determination, not of overturning it
 Moreover, courts in other jurisdictions that have followed Associates Discount have not observed the awkward distinction suggested by the majority, but have applied the reasoning of the case to agreements between purchasers and financiers as well as between purchasers and sellers. See, e.g., All-States Leasing Co. v. Ochs, 42 Or.App. 319, 600 P.2d 899, 907 n. 9 (1979).
 
 
 [6]
 In this regard, it should be noted that GECC could in turn revoke against the manufacturer of the lathe because of the substantial impairment of the goods that it as original seller had sold to GECC, the buyer in that transaction. See discussion infra Part IV
 
 
 [7]
 Indeed, even though Miller deals explicitly with breach of implied warranty of merchantability, the case never cites the U.C.C. and is therefore not clearly a U.C.C. case at all. See infra pages 1216-17
 
 
 [8]
 Indeed, even the textual matter to which the footnote is appended is merely tangential, set off as it is from the rest of the opinion by parentheses