664 So.2d 266 (1995)
BMW OF NORTH AMERICA, INC., Appellant,
v.
Mohan SINGH, and Attorney General of the State of Florida, Appellee.
No. 94-699.
District Court of Appeal of Florida, Fifth District.
October 27, 1995.
Rehearing Denied December 18, 1995.
W. Sam Holland, of Hinshaw & Culbertson, Miami, for Appellant.
Paula N. Lamb and Gregory A. Anderson, of Anderson Law Offices, Jacksonville, for Amicus Curiae, The Association of International Automobile Manufacturers, Inc.
William B. Pringle, III, Orlando, for Appellee, Mohan Singh.
Robert A. Butterworth, Attorney General, and Janet L. Smith, Assistant Attorney General, Tallahassee, for Appellee, Attorney General of the State of Florida.

ON MOTION FOR REHEARING EN BANC
GRIFFIN, Judge.
The court has elected to consider this case en banc. We withdraw the previous panel opinion and substitute the following opinion in its stead.
BMW of North America, Inc. ["BMW"] appeals a final judgment in favor of Mohan Singh in his action brought under the Motor Vehicle Warranty Enforcement Act ("Lemon *267 Law").[1] BMW principally urges that the lower court misinterpreted the applicable statutes in determining that BMW did not have the right to make a final attempt to repair the car after receipt of Singh's notice that his vehicle had been out of service by reason of repair by the manufacturer or one of its authorized service agents for one or more non-conformities for a cumulative total of twenty days.[2] Because we conclude that BMW did have the statutory right to a final repair attempt after receipt of Singh's statutory notice, we reverse.
On February 25, 1992, Singh leased a new $52,520.96 BMW 735i. Almost immediately, he began experiencing problems with the vehicle. On October 29, 1992, pursuant to section 681.104, Florida Statutes, Singh sent BMW a notice of continuing defects in the "air conditioning, brakes, transmission, decreased power in engine." The notice was received by BMW on November 2, 1992.[3] Singh's notice asserts both that three or more attempts had been made to repair the same substantial defects and that the vehicle had been out of service twenty cumulative days for repair of defects as of the date of the notice. On November 19, 1992, Singh filed a Request for Arbitration before the Florida New Motor Vehicle Arbitration Board, reciting that as of November 17, 1992, the date that Singh signed the Request, the car had been out of service due to repairs from April 7, 1992 to May 1, 1992 (twenty-five days) and from October 23, 1992 to November 2, 1992 (eleven days). Singh permitted a manufacturer's agent the opportunity to inspect the car on December 4, 1992 but refused BMW the opportunity to make any further efforts at repair.
After hearing testimony, inspecting and test-driving the vehicle, the Board rendered its decision in favor of Singh. The Board found that only the air-conditioner problem rose to the level of a defect constituting a "non-conformity" within the meaning of the statute. The Board then proceeded to find that, pursuant to section 681.104(3)(a), Florida Statutes, Singh's motor vehicle had been out of service by reason of repair of one or more non-conformities for a cumulative total of thirty or more days. Specifically, the Board found that the vehicle was out of service by reason of repair of the air conditioner between April 7 and May 1, 1992, June 3 through 10, 1992 and July 7 through 10, 1992. The Board also rendered a conclusion of law that:
[T]he terms of section 681.104(1)(b) make no reference to a "final repair attempt" by the Manufacturer under the days-out-of-service standard. Only Section 681.104(1)(a), which relates to notice to Manufacturers under the repair attempts standard, contains a provision permitting a "final repair attempt" by the Manufacturer.
In order to understand the nature of the dispute in this case, it is necessary to have very closely in mind the provisions of section 681.104. Reducing them as much as possible to the essential, the statute reads as follows:
681.104. Nonconformity of motor vehicles.
(1)(a) After three attempts have been made to repair the same nonconformity, the consumer shall give written notification, by registered or express mail to the manufacturer, of the need to repair the nonconformity to allow the manufacturer a final attempt to cure the nonconformity. The manufacturer shall have 10 days, commencing upon receipt of such notification, to respond and give the consumer the opportunity to have the motor vehicle repaired at a reasonably accessible repair facility within a reasonable time after the consumer's receipt of the response. The manufacturer shall have 10 days, commencing upon the delivery of the motor vehicle to the designated repair facility by *268 the consumer, to conform the motor vehicle to the warranty. If the manufacturer fails to respond to the consumer and give the consumer the opportunity to have the motor vehicle repaired at a reasonably accessible repair facility or perform the repairs within the time periods prescribed in this subsection, the requirement that the manufacturer be given a final attempt to cure the nonconformity, or in complete absence of a justiciable issue of either law or fact raised by the consumer, does not apply.
(b) If the motor vehicle is out of service by reason of repair of one or more nonconformities by the manufacturer or its authorized service agent for a cumulative total of 15 or more days, exclusive of downtime for routine maintenance prescribed by the owner's manual, the consumer shall so notify the manufacturer in writing by registered or express mail to give the manufacturer or its authorized service agent an opportunity to inspect or repair the vehicle.
(2)(a) If the manufacturer, or its authorized service agent, cannot conform the motor vehicle to the warranty by repairing or correcting any nonconformity after a reasonable number of attempts, the manufacturer, within 40 days, shall repurchase the motor vehicle and refund the full purchase price to the consumer, less a reasonable offset for use, or, in consideration of its receipt of payment from the consumer of a reasonable offset for use, replace the motor vehicle with a replacement motor vehicle acceptable to the consumer.
* * * * * *
(3)(a) It is presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to the warranty if, during the Lemon Law rights period, either:
1. The same nonconformity has been subject to repair at least three times by the manufacturer or its authorized service agent, plus a final attempt by the manufacturer to repair the motor vehicle if undertaken as provided for in paragraph (1)(a), and such nonconformity continues to exist; or
2. The motor vehicle has been out of service by reason of repair of one or more nonconformities by the manufacturer, or its authorized service agent, for a cumulative total of 30 or more days, exclusive of downtime for routine maintenance prescribed by the owner's manual. The manufacturer or its authorized service agent must have had at least one opportunity to inspect or repair the vehicle following receipt of the notification as provided in paragraph (1)(b). The 30-day period may be extended by any period of time during which repair services are not available to the consumer because of war, invasion, strike, fire, flood, or natural disaster.
Although many issues come to mind in this case, the only one the court is presented with is the narrow question whether the "inspect or repair" language in subsection (1)(b) means that the manufacturer has a right to attempt repair after receipt of the statutory notice or whether, after giving the statutory notice, the consumer may limit the manufacturer to inspection only. We conclude the manufacturer has the right to a repair attempt. The statute seems clear to us and internally consistent, even if not perfectly symmetrical. If a single non-conformity exists after three unsuccessful efforts at repair or, if a variety of problems have kept the car out of service for an excessive number of days, the manufacturer is to be given notice and a chance to solve the problem(s) before the manufacturer can be forced to repurchase the vehicle. After such notice and opportunity to make the vehicle conform to the warranty are given, the consumer has the right to make the manufacturer repurchase the vehicle. The language of subsection (3)(a)2 says the presumption arises that a manufacturer has had a reasonable number of attempts to conform the vehicle to the warranty where the car has been out of service a cumulative total of thirty or more days and the manufacturer or its authorized service agent has had at least one opportunity to inspect or repair the vehicle following receipt of the notification provided for in paragraph (1)(b). In this case, it is not contested that unless the opportunity to inspect provided by Singh on December 4, 1992 satisfies *269 that statutory "inspect or repair" requirement, a condition that precedes the right to require BMW to repurchase the vehicle has not occurred. Since inspection can have no "conforming to the warranty" function, it is apparent that limiting the manufacturer to the right to inspect, at the consumer's option, is not what the statute intended.
Singh and the attorney general appear to find the argument for their interpretation of the statute in the differences in language between subsection (1)(a) and subsection (b) of 681.104. However, given the drafting proclivities of the Florida legislature, it is fruitless to attempt to find meaning in the absence of symmetry or balance in related provisions of a Florida statute. Such provisions are more appropriately read in pari materia as expressing a unified legislative purpose. See Mehl v. State, 632 So.2d 593, 594-95 (Fla. 1993). Subsection (3)(a)2 plainly provides that a presumption arises that a reasonable number of attempts have been undertaken to conform a motor vehicle to the warranty if the motor vehicle has been out of service for a cumulative total of thirty or more days and the manufacturer has had at least one opportunity to inspect or repair the vehicle following the receipt of the notice. Although this language may not be identical to the language used by the legislature in (3)(a)1, it has a clear meaning and a logical place within the statutory scheme. Under this legislative scheme, the consumer's right to give notice, thereby triggering the limitation on the manufacturer's right to inspect or repair, ripens after the vehicle has been out of service for fifteen days. Then, once the vehicle has been out of service for repair a cumulative total of thirty days and the notice and opportunity to inspect or repair has been given, the presumption is triggered and the manufacturer's duty to repurchase the vehicle arises.
It appears that the reason for the difference in the language used in (3)(a)1 and (3)(a)2 may simply be the difference between subsection (1)(a) and (1)(b). In the former, the notice triggers a final opportunity to repair a single defect whereas the latter permits the giving of notice after fifteen days but no presumption arises unless and until thirty days out-of-service has been reached. Unlike the single nonconformity provision in subsection (1)(a), the thirty day out-of-service provision does not depend on there being something wrong with the vehicle at the time notice is given (or at the expiration of the thirty days), which may explain why the manufacturer may "inspect or repair."
The only other textual argument advanced by Singh and the attorney general for their interpretation of the statute is the legislature's choice of the disjunctive "or" in the phrase "inspect or repair." Singh and the attorney general further argue that: "As the giver of the opportunity, the option of inspection or repair was Singh's. His decision to allow inspection, rather than repair, was permitted by the statute and did not deprive [BMW] of any substantive right." As indicated above, we simply cannot credit the notion that the statutory scheme contemplates that after fifteen days out-of-service and the giving of the statutory notice, the manufacturer is limited to inspection of the vehicle, at the option of the consumer. Rather, "inspect or repair" means that the manufacturer can inspect the vehicle and (or) if something requires repair, it may repair the vehicle. No repair occurs, however, if inspection reveals nothing the manufacturer believes warrants repair. In this context, the selection of the disjunctive "or" by the legislature seems equally as sensible as the selection of the conjunctive "and" would have been. In any event, we decline to ascribe to the legislature's choice of "or" the deep and frankly peculiar meaning Singh and the attorney general ascribe to it.
That the interpretation placed on this statutory language by Singh and the attorney general leads to an illogical result is illustrated by their argument that it would not have mattered whether Singh had given BMW the opportunity to repair the vehicle. According to the interpretation of Singh and the attorney general, because the statute contains no requirement that the consumer give the statutory notice until after the thirty out-of-service days had expired, the giving of notice after thirty days means that no repair effort would avail the manufacturer since the presumption *270 of a reasonable number of attempts to conform the vehicle to the warranty has already risen. This would make the giving of notice and "inspect or repair" language in subsection (3)(a)2 superfluous. Also, contrary to appellees' claim, our interpretation of subsection (3)(a)2 does not require the consumer to start the process of accumulating days out of service after each nonconformity is cured. We think the intent of the statute is that, once the fifteen-day threshold has been met, notice can be given by the consumer at any time that the vehicle is a lemon. Thereafter, the manufacturer has at least one opportunity to make the car right. Once that opportunity has been given, if the motor vehicle reaches thirty days out-of-service by reason of repair of non-conformities, the consumer gets the benefit of the statutory presumption. That is not what happened in this case and Mr. Singh was, accordingly, not entitled to require BMW to reacquire the vehicle. Accordingly, we reverse with instructions to the trial court to vacate the arbitration award.
REVERSED and REMANDED.
PETERSON, C.J., and DAUKSCH, COBB, HARRIS and ANTOON, JJ., concur.
GOSHORN, J., dissents, with opinion in which W. SHARP and THOMPSON, JJ., concur.
GOSHORN, Judge, dissenting.
I respectfully dissent.
At the conclusion of the trial de novo sought by BMW, the trial court entered an order rejecting BMW's argument that it should have been given one final opportunity to repair the vehicle after it received written notice of the nonconformities. The majority holds that the trial court incorrectly interpreted the applicable statutory provisions, paragraph 681.104(1)(a) and subparagraph 681.104(3)(a)2.[1], and that contrary to the trial court's conclusion, BMW was entitled to a final repair attempt.
The parties agree that a manufacturer must be given a final repair attempt after receiving notice pursuant to paragraph 681.104(1)(a), the "three attempts to repair" procedure under which Singh did not prevail. The bone of contention is whether a manufacturer is similarly entitled to a final attempt under the "30 days out-of-service" presumption of subparagraph (3)(a)2., which raises the presumption that the manufacturer or its agent has had a reasonable number of attempts to cure the defects if the vehicle has been out of service 30 days and the manufacturer, after notice, had at least one chance to "inspect or repair."
BMW contends the "inspect or repair" language should be read so as to give the manufacturer the option of either inspecting the car or repairing it. Singh answers that it is the consumer who makes the choice whether to simply allow inspection or whether to permit another repair attempt, as it is the consumer who notifies the manufacturer to give the manufacturer the opportunity to inspect or repair. He points out that the car has already been out of use at least 30 days and argues that the consumer should not have to suffer additional hardship and loss of use for who knows how many more days while the manufacturer attempts a final repair. I agree with Singh.
The legislature used different language in the "three attempts to repair" provision, which explicitly requires that the manufacturer receive "a final attempt to cure the nonconformity," than it used in the "30 days out-of-service" presumption, which permits the manufacturer "at least one opportunity to inspect or repair the vehicle." The reason for the differing approaches is apparent from the types of problems the two provisions address. The three attempts to repair provision is directed to instances of continuing problems with the same nonconformity. The manufacturer is given one more chance to fix that nonconformity before the presumption of a lemon arises. On the other hand, under the 30 days out-of-service presumption, the focus is on the number of days the vehicle is *271 out of service, not on whether the vehicle can ultimately be conformed to the warranties. After the consumer has already endured 30 days without his new car, the legislature has determined that the presumption should arise that the car is a lemon. The opportunity to inspect or repair is given by the already-aggrieved consumer because it is he, not the manufacturer, who should decide whether he should be inconvenienced by yet another repair attempt.
The statement of legislative intent found in section 681.101 supports this view as it acknowledges the goal "that a good faith motor vehicle warranty complaint by a consumer be resolved by the manufacturer within a specified period of time." (Emphasis added). If BMW's argument were to prevail, the consumer would have to start the process of accumulating days out of service after each nonconformity was cured in order to qualify for relief under the 30 days out-of-service provision. A vehicle with numerous defects could be out of service repeatedly, with no right of relief to the consumer, if each of the defects was repaired within 30 days. I cannot believe that this is a correct interpretation of Florida's Lemon Law. Continuation of prior nonconformities is not essential to recovery where the consumer has proceeded under the 30 days out-of-service provision.
I would reject BMW's contention that the opportunity to inspect alone is worthless if the manufacturer cannot repair a defect that it concludes is repairable. The right of inspection is not an empty right. The inspection gives the manufacturer the opportunity to gather facts in support of its permissible affirmative defenses to any Lemon Law action, including that the alleged nonconformity does not substantially impair the use, value or safety of the vehicle or that the nonconformity is the result of "an accident, abuse, neglect, or unauthorized modifications or alterations ... by persons other than the manufacturer or its authorized agent" or that the claim "was not filed in good faith." See § 681.104(4), Fla. Stat. (1993).
I would reject BMW's argument that the statute does not give the consumer the right to wait until the expiration of the 30-day period to notify the manufacturer of the nonconformities for the first time. Its position is that the consumer must give notice after the 15th day but before the 30th day so that the manufacturer will have at least one opportunity, after receipt of notice, to repair the vehicle before the 30th day out of service. This approach, BMW argues, gives meaning to the extension of the 30-day period permitted in subparagraph (3)(a)2. which provides, "The 30-day period may be extended by any period of time during which repair services are not available to the consumer because of war, invasion, strike, fire, flood or natural disaster." BMW asserts that this extension would not be needed if the consumer could wait until the 30 days had expired and thereafter refuse the final repair attempt.
BMW fails to recognize that the statutory extension benefits the manufacturer, not the consumer. It results in actual out of service days not being counted as part of the 30 out-of-service days where repair work could not be performed through no fault of the manufacturer. Under specified conditions, out-of-service days do not continue to accrue. This provision is unrelated to a consumer's refusal to permit a final repair attempt after 30 qualifying out-of-service days have accrued.
In summary, I would hold that when a consumer proceeds under the 30 day out-of-service presumption, there is no requirement that the manufacturer be given a final repair attempt. This is so because there is no requirement that the nonconformities causing the vehicle to be out of service continue to exist. The presumption is clear  after a car has been out of service for a total of 30 days and the manufacturer received notice and was given an opportunity to inspect or repair, at the consumer's option, the vehicle is presumed to be a lemon.
W. SHARP and THOMPSON, JJ., concur.
NOTES
[1] The Attorney General intervened below, asserting an interest in an interpretation of the Lemon Law which protects the public interest of the citizens of Florida. The Association of International Automobile Manufacturers, Inc. has filed an amicus curiae brief in support of BMW.
[2] The form notice use by Singh referred to twenty days, but the statutory threshold is fifteen days. § 681.104(1)(b), Fla. Stat. (1993).
[3] The arbitration board found this to be the date of receipt of the notice. BMW's date stamp on the document, however, is November 4.
[1] The Lemon Law provides two avenues for relief to an aggrieved consumer: The consumer may seek relief after three attempts have been made to repair the same nonconformity or relief may be sought after the vehicle has been out of service a cumulative total of 30 days to repair one or more nonconformities. See §§ 681.104(1)(a) and 681.104(3)(a)2.