955 So.2d 543 (2007)
AMERICAN HONDA MOTOR COMPANY, INC., Petitioner,
v.
Jennifer CERASANI, Respondent.
No. SC05-1907.
Supreme Court of Florida.
April 12, 2007.
*544 Wendy F. Lumish, John R. Blue and Matthew J. Conigliaro of Carlton Fields, P.A., Miami, FL, for Petitioner.
Theodore F. Greene, III of Krohn and Moss, Ltd., Sunrise, FL, and Scott M. Cohen, Chicago, IL, for Respondent.
PARIENTE, J.
In this case we decide whether a long-term lessee of an automobile may sue for breach of warranty under the federal Magnuson-Moss Warranty Act. The Second District Court of Appeal answered this question in the affirmative in Cerasani v. American Honda Motor Co., 916 So.2d 843 (Fla. 2d DCA 2005), and certified conflict to the extent that the First District Court of Appeal held to the contrary in Sellers v. Frank Griffin AMC Jeep, Inc., 526 So.2d 147 (Fla. 1st DCA 1988). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
The issue presented by the certified conflict requires interpretation of both the federal Magnuson-Moss Warranty Act and Florida's Motor Vehicle Warranty Enforcement Act, more commonly known as the "Lemon Law." We hold that a long-term lessee who is entitled to enforce a warranty under Florida's Lemon Law also has a cause of action under the Magnuson-Moss Warranty Act. We approve the Second District's decision in this case to the extent that court reached the same conclusion and disapprove Sellers to the extent that the First District held there that an automobile warranty is not enforceable under *545 the Magnuson-Moss Warranty Act unless the automobile has been sold.

FACTS AND PROCEDURAL HISTORY
Jennifer Cerasani acquired a new Honda Civic through a long-term lease and began to have problems with the car. She took the car to a Honda dealership for repairs several times but remained dissatisfied with the results. Cerasani eventually filed suit against the manufacturer, American Honda, under the Magnuson-Moss Warranty Act ("MMWA" or "the Act"). She alleged one count of breach of written warranty and one count of breach of implied warranty. The trial court dismissed the complaint with prejudice on grounds that the provisions of the MMWA covering a "written warranty" as defined in the Act do not apply to persons who lease rather than purchase vehicles, and that Cerasani was not in privity of contract with Honda as required under Florida law for an implied warranty claim.
The Second District affirmed the dismissal of the implied warranty claim but reversed the dismissal of the claim based on Honda's express new-car warranty. The Second District concluded that the first count of Cerasani's complaint was legally sufficient to withstand the motion to dismiss. The Second District determined that Cerasani's assertions that the warranty was part of the basis of the bargain in the sale of the car to the lessor, "Honda Leasing," and that the sale was for purposes other than resale were sufficient to allege a "written warranty" as defined by the MMWA. Further, the Second District ruled that Cerasani satisfied the second and third of the three alternative definitions of "consumer" under the MMWA because she was a person to whom the car was "transferred during the duration" of a written warranty and because she was entitled under the terms of the warranty to enforce the warranty, as reflected by Honda's willingness to provide repair service. See Cerasani, 916 So.2d at 846-47.
The Second District certified conflict with Sellers on the issue of whether the MMWA applies to lease transactions. Id. at 847. In Sellers, which involved a lease of a motor vehicle from a dealership which then assigned its interest in the lease to a finance company, the First District held that "there must be an identifiable purchase and sale before the provisions of the Magnuson-Moss Act apply." 526 So.2d at 156.

ANALYSIS
The issue before us  whether a long-term lessee such as Cerasani is entitled to bring a cause of action for breach of a written warranty under the MMWA  is a matter of pure statutory interpretation. Our review of a lower court's ruling on an issue of statutory interpretation is de novo. Daniels v. Fla. Dep't of Health, 898 So.2d 61, 64 (Fla.2005). In construing a statute, this Court endeavors to effectuate legislative intent, which is primarily derived from the language used in the enactment. See Borden v. East-European Ins. Co., 921 So.2d 587, 595 (Fla.2006).
Congress enacted the MMWA to enhance the enforceability of warranties on consumer products and protect the "ultimate user of the product." Cerasani, 916 So.2d at 845 (quoting O'Connor v. BMW of N. Am., LLC, 905 So.2d 235 (Fla. 2d DCA 2005)). The MMWA authorizes a lawsuit for damages and other equitable relief by "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1) (2000). *546 The MMWA's definition of "consumer" is critical in that only a person or entity defined as a consumer may bring a cause of action under the Act. To qualify as a consumer who may file suit under the Act, a person must come within one of the three alternative categories of consumer:
The term "consumer" means [Category One] a buyer (other than for purposes of resale) of any consumer product, [Category Two] any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and [Category Three] any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).
15 U.S.C. § 2301(3) (2000) (bold text supplied). An individual qualifies as a consumer under the MMWA if he or she meets any of these three definitions. Ryan v. Am. Honda Motor Co., 186 N.J. 431, 896 A.2d 454, 456 (2006).
For the reasons that follow, we conclude that because the facts as alleged in Cerasani's complaint would create a cause of action under chapter 681, Florida Statutes (2006) (the Lemon Law), she is entitled to enforce the obligations of the warranty "under applicable State law," and therefore qualifies as a consumer under the second part of Category Three. Because this conclusion renders unnecessary an additional determination of consumer status under Categories One or Two or the first part of Category Three, we decline to address whether and under what circumstances a lessee can qualify as a consumer under these alternative criteria.
As noted, Category Three of section 2301(3) provides that a person may be a consumer if entitled to enforce the warranty either by the terms of the warranty or under applicable state law. The Second District focused on the terms of the warranty in concluding that the allegations in her complaint qualified Cerasani as a Category Three consumer. The court stated:
In the present case, we hold that Cerasani has alleged sufficient facts in her amended complaint to qualify as a category three consumer under the Act. Cerasani alleged that she was able to enforce the terms of the warranty: she took the vehicle to authorized Honda dealerships for repair on numerous occasions, and Honda never asserted that the vehicle was not covered by the written warranty.
Cerasani, 916 So.2d at 847. The Third District has similarly concluded, based on repair and service records, that a lessee qualified as a Category Three consumer entitled to enforce the warranty under the MMWA. See Mesa v. BMW of N. Am., LLC, 904 So.2d 450, 456 (Fla. 3d DCA 2005) ("Mesa was entitled to enforce the manufacturer's written warranty, as evidenced by the service and repair records of the vehicle.").
In this case, the Second District did not address whether Cerasani also qualified as a Category Three consumer on grounds that she was entitled to enforce the warranty under state law. However, it relied on its previous decision in O'Connor v. BMW of North America, LLC, 905 So.2d 235, 240-41 (Fla. 2d DCA 2005), in which it had concluded that a lessee qualified as a Category Three consumer both because repair and service records established that she was able to enforce the warranty and because the manufacturer admitted that she was entitled to enforce the warranty under Florida's Lemon Law. Cerasani, 916 So.2d at 846-47. Courts in other jurisdictions have also conferred Category Three consumer status on lessees based on their *547 entitlement to enforce warranties under state law. See Voelker v. Porsche Cars of N. Am., Inc., 353 F.3d 516, 524 (7th Cir. 2003); Dekelaita v. Nissan Motor Corp. in USA, 343 Ill.App.3d 801, 278 Ill.Dec. 649, 799 N.E.2d 367, 372 (2003); Ryan, 896 A.2d at 457-58.
Florida's Lemon Law, contained in chapter 681, Florida Statutes (2006), entitles lessees to enforce the obligations of automobile warranties. See, e.g., BMW of N. Am., Inc. v. Singh, 664 So.2d 266 (Fla. 5th DCA 1995) (applying chapter 681 to claim by automobile lessee). Section 681.103 imposes a duty on the manufacturer (or its authorized service agent) to conform a vehicle to the warranty if the nonconformity is reported by the "consumer" within the "Lemon Law rights period." Section 681.102(4) includes lessees within its definition of "consumer," and section 681.104(2)(b) provides that when a vehicle does not conform to the manufacturer's warranty, "[t]he lessee shall receive the lessee cost and the lessor shall receive the lease price less the lessee cost." Finally, section 681.112(1) authorizes a consumer to file suit to recover damages caused by a violation of the Lemon Law, and section 681.112(3) specifies that other rights and remedies are not foreclosed by chapter 681. Thus, the Lemon Law qualifies lessees for Category Three consumer status under 15 U.S.C. § 2301(3).
American Honda asserts that Category Three does not apply to lessees because the statutory language requires that the warranty at issue constitute a "written warranty" as defined by 15 U.S.C. § 2301(6), which American Honda interprets as requiring a sale of the vehicle to the ultimate consumer.[1] Cerasani claims that her complaint alleged a qualifying sale establishing a "written warranty" for purposes of Category Three status under either the terms of the warranty or applicable state law. Precedent is split on whether a "written warranty" as defined by section 2301(6) is necessary under Category Three. The United States Court of Appeals for the Seventh Circuit and the New Jersey Supreme Court have held that a "written warranty" as defined under the Act is not required for Category Three consumer status. See Voelker, 353 F.3d at 525; Ryan, 896 A.2d at 457 (deferring to Voelker as "persuasive and directly on point"). Neither court explained its conclusion in terms of the principles of statutory construction. Several state supreme courts have reached the contrary conclusion and held that Category Three consumer status does require a "written warranty" as defined by the MMWA based on a qualifying sale. See Parrot v. DaimlerChrysler Corp., 212 Ariz. 255, 130 P.3d 530, 536 (2006); DiCintio v. DaimlerChrysler Corp., 97 N.Y.2d 463, 742 N.Y.S.2d 182, 768 N.E.2d 1121, 1124 (2002).
Section 2301(3) comprises a single sentence in which the term "written warranty" *548 is used in the Category Two definition which immediately precedes the language creating Category Three:
The term "consumer" means . . . any person to whom [a consumer] product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).
15 U.S.C. § 2301(3) (emphasis supplied). It is clear that the use of the term "written warranty" in Category Two invokes the definition of "written warranty" set forth in section 2301(6). With the use of the term "written warranty" in Category Two in mind, we read the language creating Category Three as follows:
The term "consumer" means . . . any other person who is entitled
[a] by the terms of such warranty (or service contract) or
[b] under applicable State law

to enforce against the warrantor (or service contractor) the obligations of the warranty.

The demonstrative adjective "such," meaning "of the same type, class, or sort," refers to the antecedent noun "written warranty." Cf. Merriam-Webster's Collegiate Dictionary 1176 (10th ed. 1999) (defining "such"); Bryan A. Garner, Garner's Modern American Usage 758 (2003) (explaining use of "such" as a demonstrative adjective). Thus, the first alternative in Category Three requires that the warranty be a "written warranty" as defined in section 2301(6). However, Congress did not use the term "written warranty" or "such warranty" in setting forth the criteria for the second alternative, instead using the generic term "the warranty." Therefore, we conclude that the type of warranty enforceable under state law that will enable a person to qualify as a Category Three consumer is not limited to the narrow definition of "written warranty" provided in the MMWA.
The criteria for a warranty enforceable under applicable state law should be derived not from the MMWA definition of "written warranty" but rather from applicable state law. Florida's Lemon Law includes the following definition of a warranty enforceable under chapter 681:
"Warranty" means any written warranty issued by the manufacturer, or any affirmation of fact or promise made by the manufacturer, excluding statements made by the dealer, in connection with the sale of a motor vehicle to a consumer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is free of defects or will meet a specified level of performance.
§ 681.102(23), Fla. Stat. (2006). This language defines warranty as either "any written warranty," without further qualification, or "any affirmation of fact or promise" made in connection with the sale of a motor vehicle, as follows:
"Warranty" means
[1] any written warranty issued by the manufacturer, or
[2] any affirmation of fact or promise made by the manufacturer, excluding statements made by the dealer, in connection with the sale of a motor vehicle to a consumer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is free of defects or will meet a specified level of performance.
Under this construction, which is consistent with provisions throughout chapter 681 specifically bringing motor vehicle lessees within its operation, a sale is unnecessary *549 to trigger the protections of the Lemon Law under a written warranty. See § 681.102(4), (9), (11)-(13), Fla. Stat. (2006) (including lessee within definition of "consumer" and providing definitions of "lease price," "lessee," "lessee cost," and "lessor"); § 681.104(2)(b), Fla. Stat. (2006) (providing that in the case of vehicles that do not conform to the manufacturer's warranty after a reasonable number of repair attempts, "[t]he lessee shall receive the lessee cost and the lessor shall receive the lease price less the lessee cost").
Our construction of the Category Three criterion for warranties enforceable under state law, as filtered through the Florida Lemon Law, is also consistent with the MMWA's purpose of preventing warranty deception and protecting consumers. We therefore reject American Honda's assertion that the MMWA is inapplicable to leased goods under any circumstances, even where states include lessees within consumer protection statutes such as the Florida Lemon Law. Further, requiring that the lease be in connection with a sale, which is not required by chapter 681, would lead to inequitable results. For example, the lessee in a case such as Sellers, in which there was an assignment of the lease to a finance company but evidently no sale, would be excluded from the MMWA, but the lessees in O'Connor, Mesa, and this case, in which sales to finance companies were alleged, would fall within the Act's protection. We conclude that in authorizing coverage under the MMWA for warranties that are enforceable under state law, Congress provided a means by which this type of hyper-technical distinction contrary to the Act's purpose could be avoided.
The allegations in Cerasani's complaint are sufficient to make her a Category Three consumer entitled to enforce Honda's new motor vehicle warranty under state law. She alleged that Honda supplied the warranty to the lessor, who then assigned it to Cerasani, and that she submitted the car to the dealer at least seven times in an unsuccessful attempt to have defects covered by the warranty remedied. Therefore, she meets the criteria for a consumer entitled to bring suit for damages under the MMWA.

CONCLUSION
We hold that a motor vehicle lessee who is entitled to enforce the terms of a warranty under chapter 681, Florida Statutes, is also entitled to file suit under the Magnuson-Moss Warranty Act. Our rationale is that a lessee with a cause of action under chapter 681 qualifies as a Category Three consumer "entitled . . . under applicable State law to enforce against the warrantor . . . the obligations of the warranty" under 15 U.S.C. § 2301(3). Under the complaint filed in the circuit court, the respondent in this case, Cerasani, falls within this criterion and thus has a cause of action under the MMWA as a Category Three consumer. The Second District also concluded that Cerasani's complaint was sufficient to make her a consumer under the Act, but on different grounds that we need not and do not reach. Thus, we approve its decision that the trial court erred in dismissing Cerasani's complaint, but on the grounds specified herein. Turning to the conflict case, Sellers, we conclude that the First District's determination that a sale of a motor vehicle is necessary to make a warranty on the vehicle enforceable under the Act is contrary to our decision today. We therefore disapprove Sellers' holding as to the MMWA.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The Act provides:

The term "written warranty" means 
(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,
which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.
15 U.S.C. § 2301(6).