218 N.J. Super. 260 (1986)
527 A.2d 875
THE DREIER COMPANY, INC., PLAINTIFF-APPELLANT,
v.
UNITRONIX CORPORATION, A NEW JERSEY CORPORATION AND ANDREW YASENCHAK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1986.
Decided November 10, 1986.
*262 Before Judges KING, HAVEY and MUIR.
Lawrence B. Sachs, argued the cause for appellant (Sapiro and Gottlieb, attorneys, Lawrence Sachs on the brief).
Vincent J. Dotoli, Esquire, argued the cause for respondent Yasenchak (Vincent Dotoli on the brief).
David R. Strickler argued the cause for respondent Unitronix Corporation (Norris, McLaughlin & Marcus, attorneys; David Strickler on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
*263 The primary issue raised by this appeal is when does a cause of action for breach of warranty in the sale of a computer system accrue for purposes of triggering the running of a one-year time-bar contained in the sales agreement. The Law Division judge determined that the cause of action accrued upon latest delivery of the computer hardware components. We hold that the action does not accrue until tender of delivery and installation of the entire system, including the customized software programs ordered by the vendee.
Plaintiff, The Dreier Company, Inc., appeals from an order of summary judgment dismissing its complaint against defendants Unitronix Corporation and Andrew Yasenchak. In the complaint, plaintiff contends that defendants breached express and implied warranties, violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., and committed common-law fraud in the sale of an incomplete and defective computer system to it. It seeks compensatory damages, treble damages under the Consumer Fraud Act, and punitive damages for common-law fraud. In dismissing the complaint the Law Division judge concluded that plaintiff's action was time-barred by a one-year period of limitation contained in the written sales agreement.
We reverse and remand for further proceedings. Genuine issues of material fact exist as to when "tender of delivery" of the computer system occurred, see N.J.S.A. 12A:2-725(2), for purposes of establishing when plaintiff's cause of action for breach of warranty accrued. Fact issues also exist as to when plaintiff's cause of action accrued under the Consumer Fraud Act and for common-law fraud.
Plaintiff's submission of affidavits on the summary judgment motion disclosed the following facts which we accept as true. Unitronix sells, installs and maintains computer systems. During 1980 Stanley Dreier, president of plaintiff, discussed the purchase of a computer system with Yasenchak, a Unitronix salesman. Dreier informed Yasenchak that plaintiff was engaged *264 in the sale and distribution of sporting goods and that the computer system would be utilized for customer billings, inventory control, and accounts receivable and payable. Dreier had no knowledge or expertise in the computer field and therefore relied upon Yasenchak and Unitronix to provide a system to meet plaintiff's particular needs. On December 22, 1980 a representative of Unitronix sent a written quotation of $20,000 for a computer system detailing various "hardware" components at a price of $14,000, and customized "software" at a price of $6,000.
On April 22, 1981 plaintiff and Unitronix entered into a written agreement under which plaintiff purchased a system consisting of hardware and "custom programmed software" for billing, accounts receivable and inventory control. The purchase price for the total system was $19,950. Paragraphs 4 and 5 of the agreement provided as follows:
4. During the 180 days following the Date of Installation, Seller will, upon request by Buyer, provide or cause to be provided at no cost to Buyer trained maintenance personnel within one business day to perform all maintenance, servicing and repair activities which can reasonably be performed at Buyer's premises. Maintenance, servicing and repair under this Section 4 will include replacements of components of Equipment. After the 180 day period following the Date of Installation, Buyer will be solely responsible for obtaining maintenance, service and repair.
5.... Seller warrants that, for a period of 180 days, following the Date of Installation, the Equipment will be in good working order and Seller will, during the same 180 day period, at its expense (or at least the expense of DEC), keep the Equipment in good working order and repair as set forth in Section 4 hereof. Buyer acknowledges that the applications Buyer intends of the Equipment are of significant complexity and Buyer agrees that Seller's sole liability shall be to provide reasonable maintenance as set forth in Section 4 hereof, without cost to buyer.
THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.
........

No action, regardless of form, arising out of the transactions under this agreement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought within one year after the date of last payment. [Emphasis supplied].
*265 Most of the system's hardware was delivered on or about April 22, 1981, the contract date. On July 23, 1981 Dreier, at Unitronix's advice, purchased two additional discs and on February 2, 1982 a modem was purchased to permit the "software people" at Unitronix to phone into the computer to resolve any problems which might arise. Some time after July 23, 1981 a simplified billing program was implemented. According to Dreier, the billing system was "fraught with problems" from the outset. Interest charges were not added into the statements; the system would not print more than one page per statement; salesmen's commissions were not computed, and all account totals were not computed properly.
In June 1982 plaintiff determined that the invoicing portion of the inventory control system was not written to plaintiff's specifications. Consequently, the system was not ready to be implemented until April 1983. In July 1983 it was discovered that the inventory program did not deduct correctly. On August 19, 1983 Dreier wrote to Unitronix advising that:
[W]e are now ready to complete our inventory control software which is not in order. Also, as you are aware, the accounts receivable program has never been complete.... Because this software is part of that original agreement we expect this service on a no charge basis.
In March 1984 Dreier again wrote to Unitronix complaining that the "software has not been put into a completely operative basis." Dreier complained that various aspects of the billing system were incomplete; two programs that were part of the inventory system, "RECUPD and POUPD" had never been activated and were not productive, and other aspects of the software had not been programmed in accordance with plaintiff's specifications. Despite assurances from Yasenchak, nothing was done by Unitronix. In July 1984 plaintiff scrapped the Unitronix system and on April 23, 1985 filed suit.
Unitronix and Yasenchak moved for summary judgment, arguing that plaintiff's action was time-barred by the contractual one-year limitation period; that the Consumer Fraud Act did not apply to the transaction because plaintiff was not a "consumer", *266 and that defendant had not stated a cause of action for common-law fraud. The Law Division judge granted the motion, concluding that the entire action was time-barred by the one-year limitation period. In granting the motion, the judge analogized the sale of the computer system to the purchase of an automobile and concluded that the "very latest this complaint could have been filed was one year after [the] August 1982 delivery which would make it August of 1983."[1]
Plaintiff contends on appeal that the Law Division judge erred in granting summary judgment since fact questions exist as to when its cause of action accrued. It argues that the cause of action could not have accrued until July 1984 when it was finally determined that the software could not be implemented.
The problem in this case, amply underscored by the judge's analogy to the sale of an automobile, is that the sale of a computer system is not simply the delivery and installation of tangible goods. It involves the sale of various hardware and software components as well as services rendered by the vendor in providing a customized program to the vendee. A computer system is a group of devices designed: (a) to receive various forms of data (input); (b) to process the data according to predesignated sets of instructions (programs), and (c) to produce the desired information (output). See Holmes, "Application of Article Two of the Uniform Commercial Code to Computer Systems Acquisitions," 9 Rutgers Computer & Technology Law Journal, 1, 4 (1982). The software is the medium employed for storing all of the input and output data as well as the computer programs. Ibid. Application or customized "software" refers to the logic and directions loaded into the machine that cause it to do certain things on command. United States v. Seidlitz, 589 F.2d 152, 154, n. 3 (4 Cir.1978). It is the *267 computer component which is designed to solve a particular problem; for example, to maintain personnel files or to handle a company's payroll. See Deutsch, "Time Considerations and Computer Purchase Litigation", 115 New Jersey Lawyer 20 (May 1986).
A computer programmer must develop the customized application program to satisfy the vendee's specific needs in order for the system to be of any use or value to the vendee. Frequently, software is sold with the hardware as part of a "turn-key" system, able to be turned on and function immediately in place at the vendee's place of business. 9 Rutgers Computer & Technology Law Journal, supra at 25. In other instances, there may be a lapse of time between the delivery of the hardware and phasing in or "installation" of the software due to the complexity of the customer's programming needs. New Jersey Lawyer, supra at 20. Post-delivery modification, adjustment and refinement of the system at the vendee's workplace after use may be required as well. Nimmer, Raymond T., The Law of Computer Technology 6-42 (1985).
It is clear that the sale of a computer system consists not only of physical goods, but of substantial services essential in producing the final product. Nevertheless, most authorities agree that the sale of a computer system involving both hardware and software is a "sale of goods" notwithstanding the incidental service aspects of the sale; therefore Article 2 of the Uniform Commercial Code, N.J.S.A. 12A:2-101, et seq. applies. See e.g., Chatlos Systems v. National Cash Register Corp., 479 F. Supp. 738, 742 (D.N.J. 1979), aff'd and remanded on other grounds, 635 F.2d 1081 (3 Cir.1980); Triangle Underwriters, Inc. v. Honeywell, Inc., 604 F.2d 737, 742-743 (2 Cir.1979); see also 9 Rutgers Computer & Technology Law Journal, supra at 13.
N.J.S.A. 12A:2-725 is the statute of limitations controlling actions under the Code. It provides in applicable part:

*268 (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.
Thus, under the Code, the parties may reduce the period of limitation to not less than one year; a cause of action accrues when the breach occurs, regardless of the vendee's lack of knowledge of the breach, and a breach of warranty occurs when tender of delivery is made unless a warranty explicitly extends to future performance of the goods sold.
To be deemed a "warranty explicitly extend[ing] to future performance", a warranty must expressly provide some form of guarantee that the product will perform in the future as promised, not simply a warranty for repair or replacement of the defective product. See Fire Dist. No. 9, etc. v. American La France, 176 N.J. Super. 566, 572-573 (App.Div. 1980); see also White & Summers, Uniform Commercial Code (2 ed. West 1984), § 11-9 at 419.
In the present case, while paragraph 5 of the agreement warrants that the equipment will be in good working order for 180 days, it is clear in reading paragraphs 4 and 5 together that the warranty involves only a remedy: servicing, repair and replacement of components during the 180-day period. The warranty was therefore not one that "explicitly extended to future performance of the goods." It follows that if there was a breach of warranty here, it occurred upon "tender of delivery" of the computer system and plaintiff's cause of action accrued upon the date of tender.
The issue, then, is when did Unitronix "tender delivery" of the system? There is no New Jersey case deciding the question of what constitutes "tender of delivery" in the context of computer litigation. In St. Louis Home Insulators v. Burroughs *269 Corp., 793 F.2d 954 (8 Cir.1986), the court held that a claim of fraud made against a seller of computers and accompanying software was barred by Missouri's five-year limitation period. However, the holding was grounded on Missouri's statute, Mo. Rev. Stat. 516.120(5) (1929), which has been construed to require a vendee to bring suit within five years "from the date [the vendee] knew or should have known the controlling facts" constituting the fraud. St. Louis Home Insulators v. Burroughs Corp., supra, 793 F.2d at 955. In Rochester Welding Supply Corp. v. Burroughs Corp., 78 A.D.2d 983, 433 N.Y.S.2d 888 (App. Div. 1980), where the warranty under a contract for the sale of the computer extended to future performance, the court held that the breach did not occur and could not have been discovered until the seller admitted that it could not correct the defects in the system and therefore the cause of action under the Code occurred only when the concession was made.
However, in Triangle Underwriters, Inc. v. Honeywell, Inc., supra, 604 F.2d at 742, the court held that for statute of limitations purposes, the breach of contract relating to the purchase and sale of a "turn-key" system able to function immediately once in place, occurred when the system was installed and immediately proved itself incapable of functioning. The court however did not focus on what constituted "installation" of the system.
In our view, it is too simplistic an approach to conclude that a vendor tenders delivery of a computer system upon delivery and installation of the hardware. The "tender of delivery" concept was incorporated into our law of sales as part of the Code adopted in our State in 1961 (L. 1961, c. 120), well before the evolution of computer litigation. See New Jersey Lawyer, supra at 22. The drafters of the Code intended flexibility in its terms to meet unanticipated developments in the law.
This Act is drawn to provide flexibility so that, since it is intended to be a semi-permanent piece of legislation, it will provide its own machinery for expansion of commercial practices. It is intended to make it possible for the *270 law embodied in this Act to be developed by the courts in the light of unforeseen and new circumstances and practices. [Comment to N.J.S.A. 12A:1-102; emphasis supplied].
The phrase "tender of delivery" must be understood in the modern day context of computer litigation and the complexity of the computer system. It is the software which makes the computer system perform its specific functions with the input data. The hardware is therefore of no use to the vendee until the customized programs have been completed and "installed" at the vendee's workplace. As the author of "Time Considerations and Computer Purchase Litigation", New Jersey Lawyer, supra, states the problem:
The only effective way of evaluating the efficacy of a system is to use it in a real working environment over a period of time with live data. The Uniform Commercial Code fails to take into consideration the needs of our current high technology user. [New Jersey Lawyer, supra at 23].
Until the full system is "installed" and used by the vendee, the vendee cannot fully evaluate the system to determine whether it substantially complies with the vendee's specifications. Utilizing the date of delivery of the hardware as the triggering date for statute of limitation purposes places the vendee in the position of having to evaluate an incomplete product, accept it or reject it (N.J.S.A. 12A:2-601, 602), give notice of the breach (N.J.S.A. 12A:2-607(3)(a)), and to sue to vindicate a wrong which may not even then exist. Moreover, such an interpretation would conflict with the commercially reasonable policy favoring "cure" of nonconforming tenders as an alternative to litigation. See N.J.S.A. 12A:2-508; White & Summers, supra, § 8-4, at 321-322. The vendor would install the software whenever he saw fit, knowing that the time-bar clock was ticking.
The term "tender of delivery" must therefore be interpreted to include not only delivery of the hardware components, but the incidental, customized "installation" of the software programs as well. Only when the reasonable vendee knows or should know that installation of the program bargained for is complete, has there been tender of delivery of the entire computer system. It may be that use of the programs with live *271 data over a period of time is necessary before it is apparent that the software has or has not been completely installed.
Applying the foregoing principles to the present case, genuine issues of material fact exist as to when Unitronix tendered delivery of the software components. According to Unitronix's written quotation the "software" component represented $6,000 of the $20,000 purchase price and was clearly a substantial part of the entire system. Plaintiff claimed that the inventory and accounts receivable programs had not been completely installed as late as July 1984 despite assurances from Yasenchak that Unitronix would conform the software to plaintiff's specifications. On the other hand, Yasenchak claimed that the problems with the systems resulted from plaintiff's improper maintenance and the negligence of plaintiff's employees in the operation and care of the system.
The Law Division judge must decide when, if ever, Unitronix tendered delivery of the entire system, including the customized software to plaintiff. The record is unclear as to whether the software was installed sequentially or as part of a "turn-key" operation, or whether modifications after delivery of the software were needed to fine-tune the system to plaintiff's needs. If, as plaintiff claims, some of the software was not installed until well after the installation of the hardware, and some never delivered at all, tender of delivery would not have been complete and the time-limitations would not have begun to run. On the other hand, if it was reasonably apparent that defendant had installed the complete software systems, and that the difficulties encountered were because of defects in the hardware or software components, the accrual date would be the date of the completed installation. Because the Law Division judge found that the latest delivery date of the hardware had triggered the time-bar, she disregarded these fact issues. A remand for a plenary hearing to resolve these issues is therefore necessary. See Lopez v. Swyer, 62 N.J. 267 (1973).
Plaintiff also contends that the one-year time bar, as it was applied by the Law Division judge, is "unconscionable", see *272 N.J.S.A. 12A:2-302, since it may bar a vendee's right of action for breach before the computer system is completely installed. In view of our holding that the statute does not commence running until installation of the complete system, the underpinning to plaintiff's "unconscionability" claim is no longer viable, and we therefore reject it.
Citing Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555 (1985), Unitronix argues that plaintiff's claim under the Consumer Fraud Act is subsumed by plaintiff's breach of warranty action under the Code and therefore should be dismissed. In Spring Motors the Supreme Court held that a commercial buyer's remedy in seeking damages for economic loss only resulting from the sale of a defective product is under the Uniform Commercial Code, and not in strict liability or negligence. Id. at 578. The court reasoned that in view of the clear policy underpinnings of the Code, its provisions provide a "more appropriate vehicle for resolving commercial disputes arising out of business transactions between persons in a distributive chain." Id. at 571.
Spring Motors is inapposite since in the present case plaintiff is not seeking to recover for economic loss only, but also seeks treble damages under the Consumer Fraud Act, N.J.S.A. 56:8-19, for defendants' alleged "unconscionable commercial practice". N.J.S.A. 56:8-2. We do not read Spring Motors as intending to deprive a consumer of that statutory remedy simply because the transaction is controlled by the Uniform Commercial Code.
Defendants also argue that plaintiff was a merchant rather than a "consumer" and therefore has no cause of action under the Consumer Fraud Act. We disagree. N.J.S.A. 56:8-9 provides a remedy to "[a]ny person" who suffers damages as a result of conduct declared unlawful under the act. The definition of "person" includes a partnership, corporation, company or business entity. N.J.S.A. 56:8-1(d). Therefore, we are satisfied that corporations were intended to qualify as "consumers" under the act. See Hundred East Credit Corp. v. Eric Schuster, *273 212 N.J. Super. 350, 355 (App.Div. 1986); see also D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J. Super. 11, 23 (App.Div. 1985). As we stated in Hundred East Credit Corp. v. Eric Schuster, supra, 212 N.J. Super. at 356-357:
Business entities, like individual consumers, cover a wide range. Some are poor, some wealthy; some are naive, some sophisticated; some are required to submit, some are able to dominate. Even the most world-wise business entity can be inexperienced and uninformed in a given consumer transaction. Unlawful practices thus can victimize business entities as well as individual consumers.
Indeed, according to plaintiff, it had absolutely no experience in computers and was therefore just as vulnerable to unconscionable business practices as a private consumer would have been in the circumstances.
The question then is when did plaintiff's cause of action under the Consumer Fraud Act accrue for purposes of the triggering of the one-year time bar?[2] "Unconscionable commercial practice" or other conduct condemned by the act is not limited to the initial transaction but extends to "the `subsequent performance' of such person [involved in the transaction]." N.J.S.A. 56:8-2; see also D'Ercole Sales, Inc. v. Fruehauf Corp., supra 206 N.J. Super. at 25. Reading plaintiff's pleadings indulgently, its claim is that defendants made misrepresentations as to the computer system and continued to employ "unconscionable commercial practice" as late as July 1984 by promising but failing to complete the system. Therefore, while the Law Division judge did not reach the question, we are satisfied that a fact issue exists as to the accrual date of plaintiff's cause of action under the Consumer Fraud Act.
We reject defendants' contention that plaintiff's claim of common-law fraud should be dismissed because plaintiff failed to plead the cause of action with particularity. See R. 4:5-8(a). *274 An indulgent reading of the allegations in the complaint satisfies us that plaintiff has stated the necessary elements. Plaintiff claims that defendants knowingly and fraudulently represented that the computer system would satisfy plaintiff's business needs when in fact it could not, and that plaintiff relied upon the false representations by paying the contract purchase price. See Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 51-52 (1984); Jewish Center of Sussex Cty. v. Whale, 86 N.J. 619, 624 (1981).
Finally, we are satisfied that the accrual date of the common-law fraud action also must be resolved at a plenary hearing. In cases of fraud the period of limitation begins to run only from the discovery of the fraud or the time when, by reasonable diligence, it could have been discovered. Lopez v. Swyer, supra 62 N.J. at 275, n. 2. To what extent plaintiff knew of defendants' alleged fraudulent conduct, or should have known of the fraud, is left entirely in doubt by the record before us.
The order of summary judgment is reversed. The matter is remanded to the Law Division for the purpose of a plenary hearing to address the questions herein raised. We do not retain jurisdiction.
NOTES
[1] The latest delivery of equipment (the modem) was actually on February 2, 1982. Presumably the Law Division judge added the 180-day warranty period to arrive at the August 1982 date.
[2] There may be a question whether N.J.S.A. 12A:2-725(1), which permits the parties by agreement to reduce the statute of limitations for breach of contract, is intended to permit the reduction of the period of limitation for actions under the Consumer Fraud Act. Since the question has not been raised, briefed or argued, we will not address it.