869 A.2d 945 (2005)
376 N.J. Super. 185
Christopher RYAN, Plaintiff-Appellant,
v.
AMERICAN HONDA MOTOR CORPORATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 2004.
Decided March 30, 2005.
*946 Carl Poplar, Cherry Hill, argued the cause for appellant (Kimmel & Silverman, attorneys; Robert M. Silverman, on the brief).
Charles W. Craven (Marshall, Dennehey, Warner, Coleman & Goggin) of the Pennsylvania bar, admitted pro hac vice, Philadelphia, PA, argued the cause for respondent (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Brian C. Darreff, Cherry Hill, on the brief).
Lindabury, McCormick & Estabrook, Westfield, for amicus curiae Association of International Automobile Manufacturers, Inc. (James D. DeRose, of counsel; Mr. DeRose and Anne S. Burris, on the brief).
*947 Before Judges STERN, COBURN and WECKER.
The opinion of the court was delivered by WECKER, J.A.D.
The primary issue raised by this appeal is whether the Magnuson-Moss Warranty Federal Trade Commission Improvement Act, 15 U.S.C.A. § 2301-2312 (the Magnuson-Moss Act), allows a cause of action for breach of warranty to a lessee of a new car, or only to a purchaser. We hold that a lessee is a "consumer," entitled to the protection of the Magnuson-Moss Act. We therefore reverse the summary judgment dismissing plaintiff's complaint and the separate order granting sanctions in favor of defendant.

I.
These are the relevant facts and the procedural history. On March 2, 1999, plaintiff, Christopher Ryan, entered into a closed-end vehicle lease with Burns Honda, an authorized dealer and repair facility for defendant, American Honda Motor Corporation. American Honda Finance Corporation administered the lease. The new, 1999 Honda Passport leased by Ryan came with a three-year/36,000 mile manufacturer's new vehicle limited warranty, as well as several parts and equipment warranties. The lease agreement included two particularly relevant provisions in its "vehicle warranties" section: (1) "If the Vehicle is new, it is covered by the Manufacturer's New Vehicle Warranty," and (2) "Lessor assigns to me all of its rights in the above specified warranties."
After driving the vehicle for approximately 22,000 miles in the first fifteen months of the lease term, Ryan encountered engine problems. The car was towed to Burns Honda, where Ryan was told that the vehicle's engine problems were due to external damage or tampering, and therefore were not covered by the manufacturer's warranty. Ryan was not told at that time that the warranty did not apply because he had leased rather than purchased the vehicle. According to Ryan, Burns told him to file an insurance casualty claim, which he did, and his insurer authorized repairs at a cost of $8,236.99, plus car rental fees of $533.94. Ryan received the repair costs from his insurer (less the $2,000 deductible under the policy), and his rental fees were paid by the insurer as well. Burns performed the authorized repairs, but Ryan continued to have problems with the vehicle and claimed that the repairs were not effective.
On July 6, 2001, Ryan filed a three-count complaint against American Honda, seeking damages under the New Jersey Lemon Law, N.J.S.A. 56:12-29 to-49 (Count I); the Magnuson-Moss Act, 15 U.S.C.A. §§ 2301 to 2312 (Count II); and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20 (Count III).[1] After filing its answer and affirmative defenses, American Honda sent Ryan a "safe harbor letter" pursuant to Rule 1:4-8 on April 15, 2002. The letter warned Ryan that his previous insurance claim was inconsistent with his present complaint, which was therefore without merit, and that if he did not withdraw his complaint within twenty-eight days, American Honda would seek sanctions for maintaining a frivolous lawsuit. Ryan did not withdraw his complaint, and in August 2002, American Honda filed a motion for summary judgment on all counts,[2] as well as a separate motion for sanctions pursuant to Rule 1:4-8.
*948 On September 27, 2002, Ryan was permitted to withdraw his Lemon Law claim without prejudice, after conceding that discovery "confirmed that a `Lemon-Law' claim was not viable in the instant case." The reported problems with Ryan's vehicle unquestionably fell beyond the 18,000 miles specified in the Lemon Law. N.J.S.A. 56:12-31. The Law Division judge granted Honda's motion for summary judgment, dismissing Ryan's counts seeking damages under the Magnuson-Moss and Consumer Fraud Acts.
On the same date, a second Law Division judge granted Honda's motion for sanctions and subsequently awarded defendant $8,605.80 in counsel fees and costs, with little explanation: "Under the facts of the case I think that in this case the defendant is entitled to counsel fees and I will award the same once I receive your certification."[3] Ryan moved for reconsideration of the summary judgment as well as the order for sanctions. The first judge declined to reconsider his decision that the Magnuson-Moss Act did not apply to leased vehicles. The same judge briefly reinstated the Consumer Fraud claim, but it was dismissed shortly thereafter by the second judge. (Pa551). The second judge also found "no reason to reconsider [his] previous order [for sanctions]."

II.
The Magnuson-Moss Act provides that "a consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation under . . . a written warranty [or] implied warranty . . . may bring suit for damages and other legal and equitable relief" in any competent state or federal court. 15 U.S.C.A. § 2310(d)(1). The Act requires a supplier who chooses to issue an optional written warranty to clearly disclose its terms and conditions, 15 U.S.C.A. § 2302(a), and to provide the promised repairs within a reasonable time and without charge, or replace the car or refund the charges. 15 U.S.C.A. § 2304(a)(1)(4). The Act also provides for an award of attorney's fees to a successful claimant. 15 U.S.C.A. § 2310(d)(2).
Central to this case is the Act's definition of a consumer:
The term "consumer" means a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract). [[4]]
[15 U.S.C.A. § 2301(3).]
The Act thus provides three alternative definitions, or categories, of consumer:
(1) "a buyer (other than for purposes of resale) of any consumer product";
*949 (2) "any person to whom such product is transferred during the duration of an implied or written warranty . . . applicable to the product," that is, any person who receives the product while a warranty on that product is in force; and
(3) "any other person who is entitled by the terms of such warranty . . . or under applicable State law to enforce against the warrantor . . . the obligations of the warranty," that is, any person who is entitled to enforce a warranty on the product under its terms or under applicable state law. Ibid.
The question is whether Ryan is a "consumer" under the Act. 15 U.S.C.A. § 2301(3). Plaintiff's burden is to establish that he fits within any one of the three definitions set forth above. We conclude that a lessee such as Ryan falls within both the second and the third categories, and is entitled to pursue a cause of action under the Magnuson-Moss Act if his proofs otherwise establish a prima facie case under 15 U.S.C.A. § 2310(d).
The Act defines several other relevant terms, including the term "written warranty":
(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.[5]
[15 U.S.C.A. § 2301(6) (emphasis added).]
An "implied warranty" under the Act is defined as one "arising under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C.A. § 2301(7). Thus an implied warranty under the Magnuson-Moss Act can arise out of any sale of a consumer product by a supplier such as American Honda, without regard to the nature of the buyer. That broad definition is consistent with our reading of the "written warranty" definition to include promises made to a lessee.
Also key to our analysis is the Act's definition of "supplier" as "any person engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C.A. § 2301(4). Both the manufacturer and the dealer in this case thus qualify as suppliers.
The Law Division judge who initially heard defendant's motion for summary judgment relied on DiCintio v. DaimlerChrysler Corp., 97 N.Y.2d 463, 742 N.Y.S.2d 182, 768 N.E.2d 1121 (2002), to conclude that a lessee is not a "consumer" under any of the Act's three definitions.
It seems to me that I'm persuaded by defendant's arguments under the New York case of [DiCintio v. DaimlerChrysler Corp.] that [the] Magnuson-Moss [Act] requires a sale, and in fact, defines a sale before the warranties become applicable, *950 and that the plaintiff doesn't qualify under that Act. Accordingly, I find in favor of the defendant and grant summary judgment.
The judge reiterated his conclusion when he denied Ryan's motion for reconsideration:
Plaintiff clearly was a lessee and not a buyer in this instance, and the Court continues to be persuaded by the New York high court interpretation in [DiCintio v. DaimlerChrysler Corp.]. There, the plaintiff made pretty much the same arguments that have been made by the plaintiff in the instant case with regard to the interpretation of the act. The Court in looking, although, it's not bound by the New York Court's decision, feels persuaded by it nonetheless.
Particularly persuasive to the Court is [the] analysis of the legislative history of the Act . . . . point[ing] out that the University of Pennsylvania Law Professor Leary criticized the bill for failing to include lessees in its definition of consumer and testified to that before the congressional hearing. Notwithstanding that testimony, Congress [decided] not to include this within the definition of consumer.
In DiCintio, the New York Court of Appeals held:
DiCintio is not a "consumer" by virtue of being a "buyer," or by virtue of being either a transferee during the duration of a "written warranty" issued in connection with a sale or any other person entitled to enforce such a "written warranty."
[DiCintio, supra, 742 N.Y.S.2d at 185, 768 N.E.2d 1121.]
In this case, there is no dispute that plaintiff is not a "buyer" and does not satisfy the first definition of "consumer." We disagree, however, with DiCintio and with the Law Division decision holding that plaintiff fails to qualify under the Act's second or third definitions.
As a matter of statutory construction, there would be no reason for the Act to provide three alternative definitions of "consumer" if the protection provided by the Act was intended to apply only to a new car buyer, and not to one who leases a new car. The first definition  "buyer"  would cover the territory, and the second and third definitions would be superfluous. We do not favor such a construction. E.g. Bergen Commercial Bank v. Sisler, 157 N.J. 188, 204, 723 A.2d 944, 952 (1999).
Reasoning that each of the three definitions of "consumer" required a sale, and that the Magnuson-Moss Act does not define the terms "sale" or "buyer," the New York court read the Magnuson-Moss Act in conjunction with the Uniform Commercial Code, which defines "sale" in terms of the passing of title. DiCintio, supra, 742 N.Y.S.2d at 185, 768 N.E.2d 1121 (citing U.C.C. § 2-106(1) (2001) and U.C.C. § 2-103(1) (2001)). Since the lessee never obtained title to the vehicle, the court concluded not only that he was not a buyer, with which we agree, but also that there was no other relevant sale that could qualify him as a consumer.
In construing the Magnuson-Moss Act, the court in DiCintio also compared the Act to the Truth in Lending Act, 15 U.S.C.A. § 1601 (TILA), which was enacted before the Magnuson-Moss Act and expressly included "consumer" leases. The court concluded that if Congress had intended the Magnuson-Moss Act to cover leases such as this, it knew how to draft the Act accordingly. DiCintio, supra, 742 N.Y.S.2d at 186, 768 N.E.2d 1121. The opinion also quoted Professor Leary's testimony before a House Subcommittee on a bill that preceded the adoption of the Magnuson-Moss *951 Act. The professor criticized the bill because he said that the word "consumer" "[means] the first `buyer' at retail. Thus, leasing is not covered." DiCintio, supra, 742 N.Y.S.2d at 186-87, 768 N.E.2d 1121. The professor proposed instead that the Act define "consumer" as "any ultimate user of a consumer product whose use is the natural and foreseeable consequence of placing the consumer product in the channels of distribution." Id. at 187, 768 N.E.2d 1121. As enacted, we know the Act did not adopt Professor Leary's recommended language. Contrary to the negative inference the New York court drew from that history, we find it equally inferable that Congress believed that the definitions it did adopt were broad enough to cover lessees.
The New York court rejected the lessee's arguments that he fit the second definition of "consumer"  a person to whom the car is transferred during the duration of the warranty  explaining that because the financing company did not receive title until after the lease was executed, the warranty, which required a sale, was not in effect when the lease was signed. DiCintio, supra, 742 N.Y.S.2d at 187-88, 768 N.E.2d 1121. As a result, the lessee did not qualify as a "person to whom such product is transferred during the duration of an implied or written warranty." See 15 U.S.C.A. § 2301(3) (emphasis added). We disagree. The second definition of "consumer" refers to "an implied or written warranty applicable to the product." 15 U.S.C.A. § 2301(3) (emphasis added). The warranties by the supplier attach to the product, not the transferee, and are therefore in existence when the lessee takes possession under the lease.
The court also concluded that the plaintiff was not a consumer under the third definition, as one entitled to enforce the warranty under state law, because the warranty was not "part of the basis of the bargain between a supplier and a buyer for purposes other than resale." DiCintio, supra, 742 N.Y.S.2d at 188, 768 N.E.2d 1121. The court then rejected the third definition of "consumer" on the ground that DiCintio was not a person entitled to enforce the warranty under state law because no warranty existed as defined in the Magnuson-Moss Act in the absence of a qualifying sale. The court reasoned that although the
lease to DiCintio is not a sale, [the lessor] obviously intends to sell the vehicle to him or some other consumer . . . [and] probably does not count [the] limited warranties as "part of the basis of the bargain" when and if it becomes the vehicle's owner for the purpose of conveying the vehicle to a retail customer. [Ibid.]
We disagree with the reasoning that the dealer/lessor intended to sell the vehicle to "some" consumer, and therefore was not "a buyer for purposes other than resale." Ibid. Is the Warranty Act's coverage to depend upon case by case determinations about such facts as whether the dealer/lessor had the vehicle in inventory or ordered it to satisfy this lessee? Whether the dealer/lessor acquired the leased vehicle by trade with another dealer (who may have acquired it for sale or for lease or for general inventory), and not directly from the supplier?
Whatever the Act's definition of "written warranty," we have no doubt that New Jersey law allows a lessee "to enforce against the warrantor . . . the obligations of the warranty." 15 U.S.C.A. § 2301(3). In holding that an auto lessor is not subject to "a breach of implied warranty of merchantability defense to its claim [for payment] on the lease," our courts have previously described new car warranty obligations as having been "given directly by *952 the manufacturer through [the dealer] to the ultimate consumers," including the lessee. Miller Auto Leasing Co. v. Weinstein, 189 N.J.Super. 543, 546, 461 A.2d 174, 176 (Law Div.1983), aff'd o.b., 193 N.J.Super. 328, 473 A.2d 996 (App.Div.), certif. denied, 97 N.J. 676, 483 A.2d 192 (1984).
The question, then, under the Act's definition of a written warranty, is whether that writing is part of the basis of the bargain, for purposes other than resale, between either American Honda as the "supplier" and Burns Honda as the "buyer" or between Burns Honda as the "supplier" and American Honda Financial Corporation as the "buyer." As we read the language, it describes a "bargain" premised upon a new car lease  no matter whether the "buyer" and leasing entity is the dealer or a finance company. "Resale" of the vehicle at the end of the lease may be likely, but it is collateral to, and hardly the primary purpose of, the original transaction.[6] While the New York court's interpretation of the Act's definition of "warranty" may appear literally correct, it does not accord with the underlying purpose of the Act to protect the public against false, deceptive, and misleading promises by suppliers of consumer products. See Smith v. Fireworks by Girone, Inc., 180 N.J. 199, 216, 850 A.2d 456, 466 (2004) ("[I]t is well settled that statutory construction should not turn on literalisms, but on the objectives of the legislation and the common sense of the situation.").
We doubt that a dealer who takes title to a new vehicle would pay for that title unless it received the manufacturer's written warranty for the benefit of all the dealer's customers, whether buyer or lessee. The warranty is undoubtedly a condition of the transaction, that is, a basis of the bargain, and the warranty is "issued in connection with a sale"  the manufacturer's original sale of the car to the lessor.
Contrary to the holding of the New York Court of Appeals, the Seventh Circuit in Voelker v. Porsche Cars N. Am. Inc., 353 F.3d 516 (7th Cir.2003), held that a new car lessee fell within the third definition of "consumer" under the Act. According to the opinion, Mr. Voelker had leased a 2001 Porsche 911 automobile manufactured in Germany and exported to the United States, where it was sold to Copans Motors, Inc., a Porsche dealership in Pompano Beach, Florida. Copans took title to the vehicle and leased it to Voelker. Copans then assigned the lease to a finance company, Porsche Financial Services, Inc. 353 F.3d at 520. The structure of that transaction closely parallels both the Ryan and the DiCintio lease transactions.
As part of the lease agreement, Porsche and Copans provided Voelker with a "New Car Limited Warranty" which . . . [b]y its own terms . . . was to begin "on the date the car [was] first delivered to the first retail purchaser, or the date it [wa]s first used as a demonstrator, lease, or company car, whichever c [ame] first."
[Ibid.]
Addressing the question whether Voelker was a consumer under the Magnuson-Moss Act, that court concluded that Voelker did not fit within either the first or the second definition of a consumer, but he did fit under the third. Id. at 524. As to the first, the court held that Voelker was not a "buyer" because title did not pass to him under the lease agreement, and the lease *953 therefore "cannot constitute a sale for purposes of making Voelker a category one consumer." Id. at 523.
Similar to the New York Court of Appeals, the Seventh Circuit Court of Appeals found, with respect to the second category of consumer, that the warranty, by its terms, began when the car was first "used as a lease," and the transfer to Voelker therefore preceded the warranty's effective date. Id. at 524. "That warranty . . . [began] after possession of the car was transferred to Voelker, and not `during [the warranty's] duration.'" Voelker, supra, 353 F.3d at 524. The court therefore concluded that Voelker could not qualify as a category two consumer, that is, as a "person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product." Ibid. (internal citation omitted). On that we disagree with the Seventh Circuit, as we have already explained.
The court nonetheless held that Voelker's status as a consumer was established under the Act's third definition, as "any other person who is entitled by the terms of [the warranty] or under applicable State law to enforce [the warranty]." Ibid. (internal citation omitted). The court then held that as an assignee of the manufacturer's warranty, Voelker was entitled to enforce the rights arising from that warranty.
The Seventh Circuit rejected the defendants' argument that there was no written warranty as defined by the Act "because the only sale of the car was for purposes of resale," and thus there was no warranty to enforce under state law. Id. at 524-25. That very rationale formed an alternative ground for the DiCintio ruling. See DiCintio, supra, 742 N.Y.S.2d at 188, 768 N.E.2d 1121. But the Seventh Circuit held that the Act's definition of a warranty  including the requirement that it "becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product"  was irrelevant to the lessee's qualification as a category three consumer. Voelker, supra, 353 F.3d at 525 (internal citation omitted). The Voelker court further reasoned that the warranty expressly assigned to Voelker by the financing company included the right to enforce its terms. Ibid. Thus, as a person entitled to enforce the warranty under state law, he was a consumer under the Act.[7] We agree with that reasoning.
Our research has not revealed any decision by the highest court of any state other than New York, or by any federal Circuit Court of Appeals other than the Seventh Circuit, on the question whether a new car lessee is entitled to the protection of the Magnuson-Moss Act. Several intermediate appellate courts in other states, however, have found the Magnuson-Moss Act applicable to automobile lessees as well as purchasers. See Mangold v. Nissan N. Am., Inc., 347 Ill.App.3d 1008, 284 Ill.Dec. 129, 809 N.E.2d 251 (2004) (lessees qualified as "consumers" under both the second and third definitions of the Act); Peterson v. Volkswagen of Am., Inc., 272 Wis.2d 676, 679 N.W.2d 840 (Ct.App.2004) (lessee qualified as a consumer under the second definition of the Act, and the written warranty met the Act's definition of a *954 warranty), review granted, 273 Wis.2d 654, 684 N.W.2d 136 (2004); Dekelaita v. Nissan Motor Corp. in U.S.A., 343 Ill.App.3d 801, 278 Ill.Dec. 649, 799 N.E.2d 367 (2003) (lessees could bring action for breach of both express and implied warranty under the Act), appeal denied, 207 Ill.2d 599, 283 Ill.Dec. 133, 807 N.E.2d 974 (2004), followed by Pearson v. DaimlerChrysler Corp., 349 Ill.App.3d 688, 286 Ill.Dec. 173, 813 N.E.2d 230 (2004). Additionally, at least two other reported trial court decisions allow a lessee the benefit of the Act's protection. See Cohen v. AM Gen. Corp., 264 F.Supp.2d 616 (N.D.Ill.2003) (lessee qualified as a consumer under the third definition of the Act, and the written warranty qualified under the Act's definition because the "sale" to the leasing agency was for purposes other than resale, and the warranty was part of the basis of the bargain); Szubski v. Mercedes-Benz, U.S.A., L.L.C., 124 Ohio Misc.2d 82, 796 N.E.2d 81 (Ct. Common Pleas 2003) (warranty qualified under the Act's definition of both written and implied warranties and lessee may enforce the warranties). But see Alpiser v. Eagle Pontiac-GMC-Isuzu, Inc., 97 N.C.App. 610, 389 S.E.2d 293 (1990) (Magnuson-Moss Act does not apply to a leased automobile (following Sellers v. Frank Griffin AMC Jeep, Inc., 526 So.2d 147 (Fla.Dist.Ct.App.1988) (Magnuson-Moss Act does not apply to an auto lease "unless the lease bears a significant relationship to an actual purchase and sale"))). It is noteworthy, however, that neither Alpiser nor Sellers provides any analysis of the text of the Magnuson-Moss Act.

III.
Apart from parsing the language of the Act, a common sense approach leads us to the same conclusion we reach through textual analysis. It is unlikely that the auto leasing market would have developed as it has, if prospective lessees were denied the right to enforce the manufacturers' new car warranties. Moreover, if a car manufacturer's written warranty does not apply to a lessee, the dealer should not supply its leasing customer with the written warranty at all, and the manufacturer should include a clear disclaimer in the written warranty itself, stating that it is not applicable to a leasing customer. It is hard to imagine that Burns Honda did not intend Ryan to rely on the promises contained in American Honda's warranty when it presented the new car and the warranty to him and obtained his signature on the lease agreement.[8]

IV.
American Honda argued on summary judgment that plaintiff should be estopped from pursuing a warranty claim under the Magnuson-Moss Act, and that his complaint should be dismissed because he previously took a position inconsistent with his Magnuson-Moss warranty claim. Specifically, defendant argued that by submitting an accidental damage claim to his auto insurance carrier, and accepting recovery on that claim respecting the same condition alleged in his warranty claim, plaintiff has essentially admitted that his warranty claim was without merit.
We agree with the motion judge who was "not impressed" with that argument, *955 at least at the summary judgment stage. A prior inconsistent statement does not ordinarily compel dismissal of a plaintiff's complaint. Of course, evidence of plaintiff's statements and conduct in connection with the insurance claim likely will be admissible and available to the jury as prior inconsistent statements under N.J.R.E. 803(a)(1), and defendant may be successful in disproving Ryan's contention that the repairs he claimed were covered by the terms of the warranty, even if he was entitled to enforce that warranty under State law and the Magnuson-Moss Act. But those are issues for trial.
Our conclusion that Ryan qualifies as a consumer under the Act entitles him to pursue his implied warranty claim, which is not subject to the same textual analysis as was his written warranty claim, and we see no explanation for its dismissal.
In the final proceeding on defendant's summary judgment motions, plaintiff's Consumer Fraud Act claim was dismissed without analysis. While a breach of warranty does not necessarily establish consumer fraud, neither is a breach of warranty claim inconsistent with proof of consumer fraud. See, e.g., Dreier Co., Inc. v. Unitronix Corp., 218 N.J.Super. 260, 272, 527 A.2d 875, 882 (App.Div.1986). On remand, the Law Division judge is to reconsider the motion to dismiss Ryan's Consumer Fraud Act claim and provide the parties with findings of fact and conclusions of law with respect to that motion.
Needless to say, in light of our decision reversing summary judgment, the award of attorneys' fees and costs as sanctions pursuant to Rule 1:4-8 is reversed as well.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] Burns Honda has never been named as a defendant.
[2] Defendant's brief in support of summary judgment offered these arguments: fraud, quasi-estoppel, and election of remedies (all based on Ryan's previous insurance recovery); inapplicability of the Magnuson-Moss Act to a lease; expiration of the 18,000-mile limit for a Lemon Law claim; and lack of standing because the leased vehicle had been repossessed in the summer of 2001.
[3] The record reveals that the judge who awarded sanctions was aware that summary judgment had been granted the same day by a different Law Division judge; there is no explanation for the obviously related motions to have been assigned to, and decided by, different judges.
[4] There is no dispute that a new car purchased for personal use is a consumer product, and that defendant is a supplier and a warrantor within the meaning of the Act.
[5] The condition applicable to both sub-sections A and B, underlined in the quoted text of the definition, ironically appears literally to exclude the bargain between the manufacturer and the retail car dealer who buys for purposes of resale, but not the dealer who buys for purposes of leasing to an ultimate user.
[6] If a lease transaction is not a sale for purpose of making the lessee a buyer under the first definition of "consumer," then it is likewise not a "resale" and qualifies the dealer's purchase from the manufacturer as one "for purposes other than resale." See 15 U.S.C.A. § 2301(6).
[7] The circuit court rejected, however, Voelker's claim under the Act for breach of the implied warranty of merchantability because under Illinois law, "privity of contract is a prerequisite to recover economic damages for breach of implied warranty." 353 F.3d at 525. Although Voelker claimed privity of contract with Copans, the lessor, the Copans lease contained a clear disclaimer that the lease created any warranties. Id. at 526. No such privity requirement bars Ryan's claim against American Honda.
[8] If we were to conclude that the Act does not directly cover persons who lease rather than purchase their new vehicles, we might well conclude that the lessee on facts like those before us has a cause of action against the dealer for misrepresentation, common law fraud, or even consumer fraud. We recognize, of course, that Ryan has not named Burns Honda as a defendant, and we have no reason to further address such a theoretical situation.