905 So.2d 235 (2005)
Jennifer O'CONNOR, Appellant,
v.
BMW OF NORTH AMERICA, LLC, Appellee.
No. 2D04-2016.
District Court of Appeal of Florida, Second District.
June 22, 2005.
*236 Alex D. Weisberg, Theodore F. Green III, and Scott Cohen of Krohn & Moss, Ltd., Sunrise, for Appellant.
Bruce W. Bennett and Lori A. Heim of Hinshaw & Culbertson LLP, Tampa, for Appellee.
WHATLEY, Judge.
Jennifer O'Connor appeals an order granting summary judgment and final judgment in favor of BMW of North America ("BMW") on her claim for breach of written warranty under the Magnuson-Moss WarrantyFederal Trade Commission Improvement Act ("Magnuson-Moss Act" or "the Act"), 15 U.S.C. §§ 2301-12. O'Connor argues that the trial court erred in finding that the Magnuson-Moss Act did not apply to her transaction because she leased, rather than purchased, the vehicle. We agree and reverse.
In March 2001, O'Connor visited a BMW dealership and decided to lease a new 2001 BMW X5. The BMW dealership sold the vehicle to a financial institution, BMW Financial Services, which in turn immediately leased the vehicle to O'Connor. The lease agreement states that the vehicle is subject to the standard manufacturer's warranty.
Shortly after O'Connor took possession of the vehicle, she began to experience problems with the vehicle. Pursuant to the warranty, O'Connor took the car to an authorized BMW dealership for repair on numerous occasions. At no time did BMW assert that the vehicle was not covered by the written warranty. BMW's attempts to repair the vehicle were unsuccessful and O'Connor eventually attempted to revoke her acceptance of it. However, BMW refused to take the vehicle back, and O'Connor thereafter brought suit under the Magnuson-Moss Act.
The Magnuson-Moss Act permits "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract" to file suit for damages. 15 U.S.C. § 2310(d)(1). The Act was intended to increase the enforceability of warranties, Dekelaita v. Nissan Motor Corp., 343 Ill.App.3d 801, 278 Ill.Dec. 649, 799 N.E.2d 367, 369 (2003), appeal denied, 207 Ill.2d 599, 283 Ill.Dec. 133, 807 N.E.2d 974 (2004), and protect the "ultimate user of the product," Peterson v. Volkswagen of Am., Inc., 272 Wis.2d 676, 679 N.W.2d 840, 846 (2004), review granted, 273 Wis.2d 654, 684 N.W.2d 136 (2004).
BMW asserts that because the transaction was a lease, O'Connor does not fall within Magnuson-Moss's definition of consumer. The Magnuson-Moss Act defines three categories of consumers. A category one consumer is "a buyer (other than for purposes of resale) of any consumer *237 product"; a category two consumer is "any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product"; and a category three consumer is "any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 U.S.C. § 2301(3). A plaintiff need only meet one of the above definitions to qualify as a consumer under the Act. Parrot v. DaimlerChrysler Corp., 210 Ariz. 143, 108 P.3d 922, 924-25 (2005); Mangold v. Nissan N. Am., Inc., 347 Ill.App.3d 1008, 284 Ill.Dec. 129, 809 N.E.2d 251, 253 (2004); Ryan v. Am. Honda Motor Corp., 376 N.J.Super. 185, 869 A.2d 945, 949 (2005). O'Connor contends that she qualifies as a category two and a category three consumer under the Act. BMW disagrees, arguing that both categories refer to a "written warranty" which the Act defines as requiring a sale.
The Magnuson-Moss Act defines "written warranty" as follows:
(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.
15 U.S.C. § 2301(6).

Florida Cases
There have been only two cases in Florida addressing the application of the Magnuson-Moss Act to a lease. In Sellers v. Frank Griffin AMC Jeep, Inc., 526 So.2d 147, 156 (Fla. 1st DCA 1988), the appellants leased the automobile directly from the dealership. The First District held that the Magnuson-Moss Act did not apply to "a pure lease of automobiles or other consumer goods unless the lease bears a significant relationship to an actual purchase and sale." Id. In so holding, the Sellers court noted that the Magnuson-Moss Act "speaks in terms of an initial sale to a buyer in which warranties are made by the seller." Id.; see DiCintio v. DaimlerChrysler Corp., 97 N.Y.2d 463, 742 N.Y.S.2d 182, 768 N.E.2d 1121, 1127 (2002) (holding that the Magnuson-Moss Act did not apply to a lease transaction where there was no other relevant sale); Alpiser v. Eagle Pontiac-GMC-Isuzu, Inc., 97 N.C.App. 610, 389 S.E.2d 293, 295 (1990) (concluding that Magnuson-Moss did not apply to a true lease).
However, in Mesa v. BMW of North America, 904 So.2d 450 (Fla. 3d DCA 2005), the Third District recently aligned itself with those courts holding that the Magnuson-Moss Act may be applied to a lease and that the Act does not require a sale to an ultimate consumer. See Cohen v. AM Gen. Corp., 264 F.Supp.2d 616 (N.D.Ill.2003); Mangold, 347 Ill.App.3d 1008, 284 Ill.Dec. 129, 809 N.E.2d 251. In Mesa, as in the present case, the BMW dealership sold the vehicle to BMW Financial Services, which thereafter leased it to the appellant. The circuit court granted summary judgment in favor of BMW, finding *238 that the Magnuson-Moss Act did not apply to the lease. The Mesa court reversed, holding that "a vehicle involved in a prior sale that is subsequently leased with a manufacturer's warranty satisfies the MMWA's requirement that the warranty be made `in connection with the sale,' and a lessee who is assigned such a warranty may enforce it." Mesa, 904 So.2d at 457.
In Mesa, the court held that the appellant was a category two and a category three consumer under the Act. Id. at 456. The Mesa court concluded that the appellant qualified as a category two consumer because she alleged that the car was transferred to her during the duration of the warranty and there was evidence to support that allegation. Id. The Third District held that the term "transferred" in the category two definition of consumer referred to the "physical transfer" of the car and not the legal transfer of its title. Id. The court in Mesa concluded that the appellant was also a category three consumer, because she is a person who is entitled to enforce the manufacturer's written warranty, as evidenced by the vehicle's service records. Id.

Other State And Federal Courts
We note that after the Sellers opinion was released in 1988, several other states have concluded that the Magnuson-Moss Act applies to leases. See Ryan, 869 A.2d at 947 (holding that a lessee is entitled to the protection of the Magnuson-Moss Act); Szubski v. Mercedes-Benz, U.S.A., LLC, 124 Ohio Misc.2d 82, 796 N.E.2d 81, 89 (2003) (concluding that the Act's consumer protection purpose would not be advanced if it were construed to exclude lease transactions); Peterson, 679 N.W.2d at 842 (holding that "where the sale is made in an effort to facilitate a lease, the issuance of the warranty accompanies this sale, and the lessor explicitly transfers its rights in the warranty to the lesseeas was allegedly the case herethe lessee is entitled to the protections of the Act.").
In Mesa, the court found persuasive the Seventh Circuit Court of Appeal's holding in Voelker v. Porsche Cars North America, Inc., 353 F.3d 516 (7th Cir.2003). In Voelker, as in Sellers, 526 So.2d 147, the dealership leased the vehicle directly to the appellant. The Seventh Circuit held that the appellant did not qualify as a category two consumer, because the product was not transferred during the duration of an implied or written warranty. Id. at 524. In Voelker, the warranty's terms provided that it did not begin until the car was delivered to the first retail purchaser or it was first used as a demonstrator, lease, or company car. Because there was no retail purchase, the court held that the warranty did not begin until the appellant took possession of the vehicle. Id. Further, the court found that the warranty did not meet the Magnuson-Moss Act's definition of "written warranty" because it was not issued "in connection with the sale" of the car. Id. at 525. However, the court held that Magnuson-Moss applied to the transaction in that case because the lessee was a category three consumer, as he was entitled to enforce the warranty under state law. Id. The Seventh Circuit held that the warranty need not meet the definition of a written warranty under § 2301(6), where the appellant qualified as a category three consumer. Id.
Two years after Voelker, an Arizona appellate court addressed a similar case in Parrot, 210 Ariz. 143, 108 P.3d 922, where the dealership directly leased the automobile to the appellant. The Arizona court held that the appellant was a category two consumer pursuant to the Magnuson-Moss Act, because the automobile was transferred during the duration of the written *239 warranty. Id. at 925. The written warranty in Parrot provided that the warranty would begin on either "the date you take delivery of the vehicle" or "the date when the vehicle was first put into service." The court reasoned that the automobile was in service when the appellant took delivery of it because it already had thirty miles on the odometer. Id. at 927.
As in Mesa, the court rejected the appellee's argument that the term "transferred" in the category two definition of consumer refers only to a transfer of the title, holding that the term "plainly refers to the physical transfer of a consumer product and not to the legal transfer of its title." Id. at 925. The court also rejected the appellee's argument that the warranty did not qualify as a "written warranty" under the Act because it was not made in connection with a sale. Id. at 926.
First, the Act does not give a specific definition of "buyer" applicable to all uses of that term in the Act. Second, the reference to "buyer" in the definition of "written warranty" does not restrict "buyer" to one who purchases a consumer product "(other than for purposes of resale)." That parenthetical restriction only exists in prong one's use of the word "buyer."
Id.
The Parrot court also found that the lessee was a category three consumer. Id. at 927. Citing Dekelaita, 343 Ill.App.3d 801, 278 Ill.Dec. 649, 799 N.E.2d 367, the court agreed that category three was a "catch-all" provision that "applies broadly to `any other person who is entitled' to enforce the warranty by either its terms or by law." Parrot, 108 P.3d at 928. As such, the court reasoned that category three did not need to contain the word "lease" and that this specificity would be limiting since a lessee is included with other nonowner users who are entitled to enforce the warranty. Id.
In cases involving leases similar to that in the instant case, courts have held that the lessee qualifies as a category two and a category three consumer as defined by the Act. See Mangold, 347 Ill.App.3d 1008, 284 Ill.Dec. 129, 809 N.E.2d 251; Ryan, 869 A.2d at 949. In Mangold, 347 Ill.App.3d 1008, 284 Ill.Dec. 129, 809 N.E.2d 251, where, as here, the dealer sold the vehicle to a leasing company, which then leased it to the appellants, the court held that the Magnuson-Moss Act applies to leases, because a lessee falls within the definitions of a category two and category three consumer under the Act. In Mangold, the appellees argued that the Act did not apply because it required a sale and the appellants were neither purchasers nor consumers. The Illinois court rejected this argument, reasoning that the plain language of the Act only requires that such warranties be issued "in connection with the sale" of a product and that it does not require the sale be made to the ultimate consumer. Id. 284 Ill.Dec. 129, 809 N.E.2d at 254; see Dekelaita, 278 Ill.Dec. 649, 799 N.E.2d at 373; Szubski, 796 N.E.2d at 88; Peterson, 679 N.W.2d at 846. The court concluded that the language of the Act requiring the warranty be made "in connection with the sale" meant the sale between the dealership and the financing company. Id. 284 Ill.Dec. 129, 809 N.E.2d at 254-55. "Since the vehicle was sold to the lessor with a manufacturer's written warranty, the warranty was made `in connection with' the sale, and plaintiffs, as assignees, must be allowed to enforce it." Id. 284 Ill.Dec. 129, 809 N.E.2d at 255; see Dekelaita, 278 Ill.Dec. 649, 799 N.E.2d at 373 ("Where, as here, there was a salebetween the dealer and the lessorit suffices to say that there was a written warranty issued in connection with the sale. In no event does the *240 Act limit a `sale' to transactions between the warrantor and the ultimate consumer.").
In holding that the appellants were category two consumers, the Mangold court reasoned that the lessor transferred all of its rights under the warranty to the appellants during the warranty period. Id. 284 Ill.Dec. 129, 809 N.E.2d at 253. The court noted that the language of the Act does not suggest that title must pass to be a category two consumer. Id.; see Dekelaita, 278 Ill.Dec. 649, 799 N.E.2d at 371 ("[B]ecause requiring the consumer to be a `buyer' was in the definition's first prong... and because legislators are presumed to give each word meaning, it would seem inappropriate to read this clause in the second prong as requiring a purchase or a transfer of title, as such requirement is typically read into terms like `buyer.'").
In holding that the appellants were category three consumers, the Mangold court found that the appellants were persons entitled by the terms of the warranty to enforce it against the warrantor. Id. 284 Ill.Dec. 129, 809 N.E.2d at 253-54. In so holding, the court noted that the dealership serviced the appellants' vehicle on several occasions pursuant to the warranty. "We find no merit in allowing plaintiffs to enforce the warranty for repairs, but denying warranty rights when a violation under the Act is asserted. Since plaintiffs were entitled to enforce the warranty when the vehicle required repair, they qualified as consumers under the third prong." Id. 284 Ill.Dec. 129, 809 N.E.2d at 254; see Dekelaita, 278 Ill.Dec. 649, 799 N.E.2d at 372.

Conclusion
We agree with those courts holding that the Act's definition of category two and three consumers is not limited to only a buyer and that the Act does not require a sale to the ultimate consumer. As noted by the court in Ryan, 869 A.2d at 950,
As a matter of statutory construction, there would be no reason for the Act to provide three alternative definitions of "consumer" if the protection provided by the Act was intended to apply only to a new car buyer, and not to one who leases a new car. The first definition"buyer"would cover the territory, and the second and third definitions would be superfluous.
We conclude that O'Connor is both a category two and category three consumer under the Magnuson-Moss Act. She is a category two consumer because the BMW was transferred to her during the duration of the written warranty. By its own terms, the warranty was to begin "on the date of first retail sale, or the date the vehicle is first placed in service as a demonstrator or company vehicle, whichever is earlier." The lease reflects that the vehicle had eighty-five miles on the odometer when O'Connor took possession of it, and therefore, as in Parrot, the automobile was in service and the warranty had begun when the vehicle was transferred to O'Connor. Further, the written warranty was made "in connection with the sale" of the vehicle from the dealer to the leasing company. See 15 U.S.C. § 2301(6); Mesa, 904 So.2d at 457.
O'Connor qualifies as a category three consumer because she is entitled, both by the terms of the warranty and under applicable state law, to enforce the manufacturer's warranty. She was clearly able to enforce the terms of the warranty, as evidenced by the repair and service records of the vehicle. See Mesa, 904 So.2d at 456. Further, BMW admitted that O'Connor is entitled to enforce the warranty under applicable state law. See Ch. 681, Fla. Stat. (2001) (Florida's "Motor Vehicle Warranty Enforcement Act."). *241 Therefore, the Magnuson-Moss Act applies to O'Connor's lease transaction, and the trial court erred in entering summary judgment in favor of BMW. If O'Connor could not enforce the written warranty as BMW suggests, "the manufacturer's promises and the warranty are meaningless, which is contrary to both the Magnuson-Moss Act's plain language and its legislative intent to protect consumers." Parrot, 108 P.3d at 927.
To the extent that Sellers concluded that the Magnuson-Moss Act does not apply to lease transactions, we certify conflict with the First District's decision in Sellers v. Frank Griffin AMC Jeep, Inc., 526 So.2d 147, 156 (Fla. 1st DCA 1988).
Accordingly, we reverse the order granting summary judgment and the final judgment in favor of BMW and remand for further proceedings consistent with this opinion.
Reversed and remanded; conflict certified.
STRINGER and LaROSE, JJ., Concur.